**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose ARIAS–SANTOS, Maria Elena Rascon, Defendants–Appellants.**

**Nos. 93–1128, 93–1129.**

United States Court of Appeals,
Tenth Circuit.

Nov. 1, 1994.

Michael G. Katz, Federal Public Defender, and Jenine Jensen, Asst. Federal Public De-fender, Denver, CO, on the briefs, for defendant-appellant Jose Arias–Santos.

Normando R. Pacheco, Denver, CO, for defendant-appellant Maria Rascon.

Charlotte J. Mapes, Asst. U.S. Atty. (James R. Allison, Interim U.S. Atty., and John M. Hutchins, Asst. U.S. Atty., with her on the briefs), of Mountain States Drug Task Force, Denver, CO, for plaintiff-appellee U.S.

Before SEYMOUR, Chief Judge, LOGAN, and ANDERSON, Circuit Judges.

SEYMOUR, Chief Judge.

Maria Rascon and Jose Arias–Santos were convicted after a jury trial of conspiracy to possess over 500 grams of cocaine with intent to distribute.[1] Mr. Arias was also convicted of possession with intent to distribute over 500 grams of cocaine, and of carrying a firearm during and in relation to a drug offense. Mr. Arias contends on appeal that his due process rights were violated when the trial court refused to allow him to cross-examine government witnesses about allegations of witness coaching, that the court erred in its response to a question from the jury during its deliberations, and that the court erred in enhancing his sentence for obstruction of justice on the basis of his trial testimony. Ms. Rascon contends that the trial court erred in determining, for purposes of sentencing, that the amount of cocaine she conspired to possess was in excess of 500 grams. We affirm Mr. Arias' convictions, vacate his sentence, and remand for resentencing. We affirm Ms. Rascon's sentence.

I.

Mr. Arias and Ms. Rascon were tried jointly on charges arising from a drug transaction involving undercover DEA agents and a confidential informant. The record, viewed in the light most favorable to the government, *see United States v. Gary*, 999 F.2d 474, 476 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 259, 126 L.Ed.2d 211 (1993), reveals the following sequence of events. Ralph Villarruel, a DEA special agent, was working un-

---

1. Ms. Rascon was acquitted on a count charging her with aiding and abetting possession of over 500 grams of cocaine with intent to distribute.

dercover as a buyer of cocaine with an informant named Adrian Teran–Guillan. Mr. Teran had known Ms. Rascon for about six years. In early September 1992, Mr. Teran had several conversations with Ms. Rascon about illegal drug transactions. Ms. Rascon agreed to introduce Mr. Teran to the man who lived with her, Arnold Valadez–Herrera, so that they could do business. On September 14, Ms. Rascon and Mr. Teran agreed to a sale of cocaine on the following day.

The next day, Mr. Teran and Agent Villarruel picked up Ms. Rascon, went to a restaurant parking lot, and showed her the purchase money in a briefcase. On the way, they discussed the price for a sale of three kilos of cocaine. After Ms. Rascon saw the money, she drove with Mr. Teran and Agent Villarruel to another parking lot and met with Mr. Valadez. After negotiations and phone calls, the parties agreed to a two-kilo deal at another restaurant parking lot.

Mr. Teran and Agent Villarruel drove to this parking lot and met with Ms. Rascon, Mr. Valadez, Mr. Arias, and another coconspirator named Estefan Olivas–Lasos.[2] Mr. Valadez introduced Mr. Teran to Mr. Arias, who showed Mr. Teran cocaine which he was carrying in a white paper bag. Mr. Teran said that the bag did not contain the two kilo amount which they had agreed upon, and Mr. Arias responded that the rest was in his car. Mr. Teran returned to Agent Villarruel and told him that he had not seen the whole amount. Shortly thereafter an arrest signal was given, and Ms. Rascon, Mr. Valadez, Mr. Arias and Mr. Olivas were taken into custody. The white paper bag containing the drugs was found on the ground a few inches from where Mr. Arias had been arrested. Agents conducted an inventory search of Mr. Arias' car and discovered a weapon and a nylon bag containing drugs and currency. The cocaine in the white paper bag weighed almost 400 grams, and the nylon bag found in Mr. Arias' car contained about 119 grams of cocaine.

### II.

Mr. Arias argues on appeal that his due process rights were violated when the lower court refused to allow Agent Villarruel to be cross-examined at trial about witness coaching that had allegedly occurred at a pretrial probable cause hearing. At the earlier hearing, several DEA agents who had been present at the drug transaction in undercover capacities testified about the events that took place there. Witnesses were not sequestered and agents who were not testifying were sitting in the courtroom. Counsel for Mr. Arias was subsequently told by other spectators that government agents who were spectators gestured at testifying agents, and that the agents changed their testimony as a result. Specifically, Mr. Arias' counsel received information that Agent Dennis Follett, who had conducted surveillance during the drug transaction, was coached by Agent Villarruel when asked whether Mr. Arias had the white paper bag in his possession at a particular time. In addition, Agent Gregory Salazar, who had videotaped the drug transaction from a surveillance van, was allegedly coached by Agent Follett when testifying about the direction from which Mr. Arias arrived at the restaurant parking lot with the white bag in his hand.

The court subsequently held a pretrial hearing on the coaching allegations pursuant to Mr. Arias' motions to strike the agents' testimony at the probable cause hearing, to preclude their testimony at trial, and to dismiss. Although the court did not determine whether the alleged coaching had actually occurred, it refused to strike the earlier testimony or to dismiss the charges. The court held that because the coached witnesses, who were to testify at trial, would "be subject to cross-examination on the testimony earlier given at the [probable cause] hearing," no due process violation would occur. Rec., vol. 8, at 51.

At trial, counsel for Mr. Arias began to cross-examine Agent Villarruel about his involvement in the alleged coaching at the probable cause hearing. The court sustained

---

**2.** Mr. Valadez and Mr. Olivas were not tried with Ms. Rascon and Mr. Arias, and they are not parties to this appeal.

the government's objection on the basis of relevance. After the jury was excused for the day, defense counsel argued that the issue went to the credibility of the DEA agents, which was critical to the case. The court reiterated its decision to preclude the questions, stating that the matter was too collateral and that counsel could not hold a trial about the probable cause hearing. Rec., vol. 2, at 117–18.[3] Mr. Arias contends that in so ruling, the court committed reversible constitutional error.

■ The primary purpose of the right to confront adverse witnesses guaranteed by the Sixth Amendment " 'is *to secure for the opponent the opportunity of cross-examination.*' " *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 5 *J. Wigmore, Evidence* § 1395, 123 (3d ed. 1940)). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 316, 94 S.Ct. at 1110. Accordingly, a "defendant's right to confrontation may be violated if the trial court precludes an entire relevant area of cross-examination." *United States v. Lonedog,* 929 F.2d 568, 570 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991). Although the trial court may impose reasonable limits on cross-examination, *see United States v. DeSoto,* 950 F.2d 626, 629 (10th Cir.1991), defense "counsel should be allowed 'to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness,' " *id.* (quoting *Davis,* 415 U.S. at 318, 94 S.Ct. at 1111–12).

■ Questions directed at revealing that the testimony of a witness was coached are clearly relevant to a jury's assessment of the reliability of that witness. *See, e.g., Geders v. United States,* 425 U.S. 80, 89–90, 96 S.Ct. 1330, 1335–36, 47 L.Ed.2d 592 (1976). Nonetheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). Here, the witness at whom the coaching inquiry was directed, Agent Villarruel, had not been coached. Instead, he was one of the agents who allegedly coached another witness. Moreover, the alleged coaching did not occur during trial, but took place at an earlier proceeding. The proposed cross-examination thus raised concerns about relevance and confusion of the issues. Rather than limiting the scope of cross-examination to address these concerns, however, the trial court prohibited all inquiry regarding the alleged coaching incidents.

■ We need not decide whether the court's ruling here denied Mr. Arias his Sixth Amendment rights because the error, if any, does not warrant reversal. In applying the constitutional harmless error analysis of *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), to a Confrontation Clause violation, we must inquire whether, "assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438.

> Among the factors that we consider are "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case."

*DeSoto,* 950 F.2d at 630–31 (quoting *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438).

---

**3.** Counsel for Mr. Arias argued that the alleged coaching was not collateral, contending that the jury had a right to hear evidence that would "discredit the DEA agents who are testifying against my client." Rec., vol. 2, at 117. The court responded: "I understand the purpose, and I'm telling you we're not going to hold a trial about [the probable cause] hearing, and the matter is excluded." *Id.* at 118.

The allegedly tainted testimony here involved whether Mr. Arias was holding the paper bag when he went to his car with Mr. Teran before the arrest, and whether he arrived at the scene from the north or the south. Upon review of the record in light of the relevant factors set out above, we conclude that the outcome of the trial would not have been affected even if defense counsel had been allowed to fully explore the reliability of this testimony. Agent Follett's testimony that Mr. Arias was carrying the white bag when he went to his car with Mr. Teran was clearly cumulative. Other agents testified that they had observed Mr. Arias carrying the bag, and the video tape likewise showed him with it. Indeed, Mr. Arias took the stand and admitted that he had carried the bag because Mr. Olivas asked him to, although he denied knowing what it contained. In view of the overwhelming evidence that Mr. Arias carried the white bag at various times during the transaction, he has not shown how his actual possession at this particular point was significant to either the prosecution's case or to his defense.

Agent Salazar's testimony on the direction from which Mr. Arias approached the parking lot is even less likely to have played a role in the jury's factfinding process. Because the agents all described the transaction by referring to a chart of the restaurant parking lot, the jury knew the relative positions of the participants as events unfolded. Moreover, Mr. Arias has again failed to explain how the direction from which he arrived was relevant to either the prosecution's case or his defense. Accordingly, we conclude that the trial court's refusal to allow Mr. Arias to explore the reliability of this testimony, even if error, was harmless beyond a reasonable doubt.

### III.

■ Mr. Arias also argues that the trial court erred in its response to a question sent in by the jury during deliberations. The question stated: "We need an interpretation of the first phrase of Count 4, 'knowingly, intentionally and unlawfully possessed with intent to distribute.' We are not sure exactly what is required of this charge. Could you please explain the requirements to be in violation on this charge?" Rec., supp. vol. 1, at 2. The court gave the jury the following supplemental instruction:

In response to this, I'm going to reread to you what might be called the elements instruction, that is, the elements of the offense charged in Count 4, which is that in order to sustain its burden of proof for the crime of possession of a controlled substance with the intent to distribute that substance, as charged in Count 4 of the indictment, the government must prove the following three essential elements beyond a reasonable doubt. One, on or about September 15, 1992, the defendants, Jose Arias–Santos and Maria Elena Rascon, possessed a mixture or substance containing cocaine; two, the defendants knew that substance was cocaine; and, three, the defendants intended to distribute this cocaine.

Now, in reading this one part of the charge, I also repeat to you the caution that was contained in the instructions, that is, no single one of the instructions states all of the law applicable to the case, but all of them must be considered in connection with, because they relate to the other instructions, and the instructions must be considered as a whole, including the instructions concerning intent, possession, aid and abet and so forth.

*Id.* at 4–5. Defense counsel pointed out that because the jurors did not have a copy of the instructions, they were in a vacuum when the court referred them to the instructions as a whole. Counsel for Mr. Arias therefore asked the court to read all the elements related to the indictment, and the court refused. On appeal, Mr. Arias contends that the court's response did not answer the jury's question.

■ The submission of supplemental jury instructions after the jury has retired is a matter committed to the trial court's discretion. *United States v. Zimmerman,* 943 F.2d 1204, 1213 (10th Cir.1991). The decision to reread the jury an instruction previously given is encompassed within the court's exercise of this discretion. *See United States v. Cotton,* 646 F.2d 430, 434 (10th

Cir.), *cert. denied,* 454 U.S. 861, 102 S.Ct. 316, 70 L.Ed.2d 159 (1981). Whether to provide the jury with written instructions is likewise discretionary. *See United States v. Calabrese,* 645 F.2d 1379, 1388 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390, *and cert. denied,* 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981). However, "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). We review the jury instructions as a whole to determine whether they correctly state the governing law and provide an ample understanding of the issues and the applicable standards. *Zimmerman,* 943 F.2d at 1213.

Mr. Arias does not argue that the instruction reread by the trial court in response to the jury's inquiry is an incorrect statement of the law. Rather he contends that by merely restating the elements of the offense charged in Count 4 without repeating the definitions of intent and possession, the court did not answer the jury's question, particularly when the jury had not been given a written copy of the original instructions to have during deliberations. We have carefully reviewed the court's response to the jury's question in light of the entire record and we conclude that the court did not abuse its discretion in its handling of the jury instructions. The jury asked for an explanation of the requirements for a violation of Count 4, which charged Mr. Arias and Ms. Rascon with possession with intent to distribute. In response, the court reread the instruction setting out the elements of that offense. The court further instructed the jury that it was to consider all the instructions, including those previously given defining intent and possession, as a whole. Mr. Arias' contention that in so doing the court failed to answer the jury's question is refuted by the fact that the jury did not ask for further clarification and by the fact that the jury applied the court's instructions in acquitting Ms. Rascon on Count 4 while convicting Mr. Arias. Accordingly, we find no abuse of discretion.

## IV.

Finally, Mr. Arias asserts that the trial court erred in enhancing his sentence for obstruction of justice. The sentencing guidelines provide a two-level enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Application Note 1 to this guideline states that a denial of guilt is not a basis for applying the guideline unless the denial constitutes perjury, and further states that in applying this statement to alleged false testimony, the court should evaluate that testimony in the light most favorable to the defendant.

In this case, Mr. Arias objected to the recommendation in the presentence report that his sentence be enhanced pursuant to section 3C1.1 on the basis of his trial testimony. In response to this objection the court stated:

> Well, the defendant's testimony, if it had been believed by the jury, would have resulted in an acquittal under the instructions. So, you know, I have to go according to the verdict, and the verdict finds that—I have to find from the verdict that necessarily the jury didn't believe him. And that, whether it's fair or not, is the law.

Rec., vol. 4, at 7. On appeal, Mr. Arias contends that the court did not provide the requisite findings in support of its decision to enhance under this section. The government agrees, and so do we.

The Supreme Court has directed that if a defendant objects to a section 3C1.1 enhancement based on trial testimony, "a district court must review the evidence and make independent findings necessary to establish" that the defendant's trial testimony constituted perjury which obstructed justice. *United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993). A defendant commits perjury for purposes of this enhancement if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion,

mistake or faulty memory." *Id.* —— U.S. at ——, 113 S.Ct. at 1116. "[T]he law is clear that perjury requires proof that the witness's [sic] false testimony concerned a *material* matter 'designed to substantially affect the outcome of the case....'" *United States v. Parker,* 25 F.3d 442, 448 (7th Cir.1994) (quoting *Dunnigan,* —— U.S. at ——, 113 S.Ct. at 1117). A statement is material under section 3C1.1 when, if believed, it "would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n. 5).

We addressed the application of section 3C1.1 to trial testimony in *United States v. Markum,* 4 F.3d 891, 897–98 (10th Cir.1993), where we pointed out that

> [t]he mere fact that a defendant testifies to his or her innocence and is later found guilty by the jury does not automatically warrant a finding of perjury. An automatic finding of untruthfulness, based on the verdict alone, would impinge upon the constitutional right to testify on one's own behalf.

*Id.* at 897 (citation omitted). We held accordingly that "the trial court must specify which portion of the defendant's testimony it considers to be false." *Id.*

In *Markum,* as here, the trial court enhanced under section 3C1.1 solely on the basis of the verdict. We held there that "[t]his is not a sufficient basis for application of the § 3C1.1 enhancement under *Dunnigan.* The record does not contain a specific finding that independent of the jury verdict, defendant committed perjury. Nor does it suggest what particular testimony the district court found to be untrue." *Id.* at 898. Our decision in *Markum* that the enhancement was improper is equally applicable here. We therefore vacate Mr. Arias' sentence and remand for resentencing in accordance with the procedure set out in *Dunnigan* and mandated in *Markum.* Upon remand, if the district court determines that enhancement is appropriate under section 3C1.1 on the basis of Mr. Arias' trial testimony, the court must indicate what specific testimony it finds to be untrue and how that testimony concerns a material matter designed to substantially affect the outcome of the case.

## V.

Ms. Rascon challenges the district court's decision to base her sentence on a drug quantity of at least 500 grams of cocaine. As set out above, she was convicted of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, while she was acquitted on Count 4, which charged her with aiding and abetting the possession of cocaine with intent to distribute. Under section 846, Ms. Rascon was subject to the same penalty for the conspiracy conviction as that prescribed for the substantive possession offense. Section 841(b)(1)(B) provides a sentence of not less than five or more than forty years for a conviction under section 841(a)(1) involving 500 grams or more of cocaine. Section 841(b)(1)(C) provides that if section 841(b)(1)(B) does not apply, *i.e.,* if the amount of cocaine involved is less than 500 grams, the defendant is subject to a sentence of not more than twenty years.

The applicable guideline, section 2D1.1, establishes an offense level of 26 for conspiracy to possess with intent to distribute at least 500 grams of cocaine. This offense level, combined with Ms. Rascon's criminal history category of I, resulted in a sentencing range of sixty-three to seventy-eight months. The district court determined that Ms. Rascon was entitled to a downward departure under section 5K2.12 for duress,[4] but that the departure was limited to three months by the statutory five-year minimum.

■ Ms. Rascon contends that the court erred in basing her sentence on 500 grams of cocaine when she was acquitted of the possession offense charged in Count 4. She argues that because the court erroneously calculated her sentence using the 500 gram quantity, she was sentenced under an improperly high guideline range and her downward departure was erroneously restricted

---

4. The court cited to section 5K2.11 rather than section 5K2.12. However, the basis for the departure was clearly duress, which is addressed under section 5K2.12. The government does not raise the departure on appeal.

by the inapplicable statutory minimum sentence.

 Upon her conviction of conspiracy to possess with intent to distribute cocaine, Ms. Rascon was accountable for that drug quantity which was within the scope of the agreement and reasonably foreseeable to her. *See United States v. Coleman,* 7 F.3d 1500, 1504 (10th Cir.1993); *United States v. Evans,* 970 F.2d 663, 676 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993). The sentencing judge's assessment of the drug quantity attributable to a convicted conspirator is a fact finding determined by a preponderance of the evidence which we review for clear error. *See United States v. Roberts,* 14 F.3d 502, 519 (10th Cir.1993); *Coleman,* 7 F.3d at 1503–04. The trial court found that both the amount of cocaine in the white paper bag and the amount found in Mr. Arias' car were attributable to Ms. Rascon. Our review of the record reveals evidence sufficient to support this determination. Trial testimony indicated that Ms. Rascon originally negotiated for drug deals of two and three kilos of cocaine. Testimony also revealed that when Mr. Teran complained to Mr. Arias that the amount of cocaine in the bag was less than they had agreed upon, Mr. Arias responded that he had more in the car. In light of this evidence, we cannot say that the court committed clear error in determining that the cocaine in Mr. Arias' car was within the scope of the conspiracy and foreseeable by Ms. Rascon. The fact that Ms. Rascon was acquitted on the possession charge is irrelevant to ascertaining the quantity of drug attributable to her for purposes of her sentence on the conspiracy conviction. Ms. Rascon may be sentenced on the basis of cocaine possessed by another conspirator, so long as the amount is within the scope of the conspiracy and foreseeable by Ms. Rascon. *See United States v. Williams,* 897 F.2d 1034, 1041 (10th Cir.1990) (conspirator's sentence

properly based on foreseeable quantity involved in conspiracy even if she did not personally handle that amount), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991).[5]

In sum, we AFFIRM Mr. Arias' convictions but remand for vacation of his sentence and for resentencing. We AFFIRM the sentence of Ms. Rascon.

---

5. Although, as discussed above, the disposition of the possession count against Ms. Rascon has no bearing on the amount of cocaine attributable to her for purposes of her conspiracy sentence, we note our holding that a sentencing judge may consider conduct alleged in a count upon which a defendant has been acquitted. *See United*

*States v. Garcia,* 987 F.2d 1459, 1462 (10th Cir. 1993); *see also United States v. Manor,* 936 F.2d 1238, 1242–43 (11th Cir.1991) (acquittal based on reasonable doubt standard does not preclude contrary finding by sentencing judge under preponderance of evidence standard).