UNITED STATES of America,
Plaintiff–Appellee,

v.

**Thomas Nathaniel WOOD and David Leslie Wood, Defendants–Appellants.**

Nos. 94–7092, 94–7096 and 94–7097.

United States Court of Appeals,
Tenth Circuit.

June 9, 1995.

---

Gene Stipe and Tim Maxcey of Stipe Law Firm, McAlester, OK, on the brief, for defendants-appellants.

John Raley, U.S. Atty., and Dennis A. Fries, Asst. U.S. Atty., on the brief, for plaintiff-appellee.

Before SEYMOUR, Chief Judge, McKAY and HENRY, Circuit Judges.

SEYMOUR, Chief Judge.

Thomas Nathaniel Wood and David Leslie Wood were charged with manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(2), and 18 U.S.C. § 2, possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, maintaining a place for the purpose of manufacturing, distributing or using marijuana in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2, and conspiring to commit the above offenses in violation of 21 U.S.C. § 846. A fifth count charging both defendants with managing a building for the purpose of unlawfully manufacturing, distributing, or using marijuana in violation of 21 U.S.C. § 856(a)(2) was dismissed prior to trial. A jury convicted both defendants on all the remaining counts. The trial judge sentenced Thomas Wood to 97 months and David Wood to 78 months. Defendants appeal, challenging both their convictions and their sentences. We affirm.[1]

## I.

The evidence at trial, viewed most favorably to the government, see *United States v. Richard*, 969 F.2d 849, 856 (10th Cir.), cert.

---

1. After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

denied, —— U.S. ——, 113 S.Ct. 248, 121 L.Ed.2d 181 (1992) and —— U.S. ——, 113 S.Ct. 1009, 122 L.Ed.2d 157 (1993), establishes the following facts. Eugene Norwell, a law enforcement officer with the National Forest Service, was performing aerial surveillance on June 10, 1993 for the Forest Service when he observed three patches of marijuana growing on National Forest land. The next day he did a ground check of the area he had spotted, traveling beyond the end of a Forest Service spur road about twenty yards to the first patch of seven marijuana plants. On a path further into the woods he discovered a second patch of fifty-three plants and ten yards beyond he found a third patch of twenty-eight plants. Officer Norwell testified that the plants were growing out of man-made mounds and that the vegetation around the plants had been cut away with a sharp instrument in order to expose the plants to sunlight. He further testified that the patches were located away from recreation areas in a remote place without hiking trails that received very little traffic.

Officer Norwell arranged for the installation of a remote camera system at the second patch which would begin videotaping whenever anything moved into its range. Gary Rose, another Forest Service law enforcement officer, set up the camera ten to fifteen feet away from the plants in the second patch. He returned to check the camera about fifteen times before it was removed. On June 29, when he returned to service the camera, he noticed fresh tire tracks and footprints in the area. He reviewed the videotape, which showed that two individuals had been in the patch on June 26. Officer Norwell identified one of them as defendant Thomas Wood. The other person was subsequently determined to be Thomas Wood's brother, defendant David Wood. Defendants appeared to be "working" the plants, topping them to promote a greater volume of growth. On August 3 when Officer Rose returned, he noticed footprints and found that, although the plants had previously been observed to be drying out and turning yellow due to the lack of rain, they now had better color, indicating that someone had been at the patch to water and fertilize the plants. He had also discovered a milk jug cap in the area. The videotape showed that defendants had been at the patch July 24, grooming the plants and carrying plastic jugs. On September 27 when Officer Rose went to the patch, he noticed some tire tracks on the service road and discovered that the plants at the first patch were missing, although the camera did not show any activity at the second patch. When he returned on October 12, he noticed a set of tracks leading into the area. Several of the plants at the other patches had been removed and the remaining plants had been heavily trimmed. The videotape revealed that defendants groomed the patch on October 9. On October 20, the officers removed the remaining twenty-four plants from the second and third patches and took samples of them.

Federal agents executed a search warrant on October 30 at the home of Thomas Wood's parents, where Mr. Wood had lived during the summer. The agents discovered a paper sack containing marijuana in an upstairs bedroom, a zig-zag roll of papers, marijuana seeds, a pipe containing marijuana, ziplock baggies, and a statement of earnings. In addition, an agent saw a set of scales, a roach clip, and marijuana seeds in the front seat of an automobile parked in the front yard and belonging to Thomas Wood. The agent also observed the root of a marijuana plant protruding from the back of the closed car trunk. Upon opening the trunk, the agents discovered twelve freshly pulled marijuana plants. When agents executed a search warrant at David Wood's residence, they discovered a small portable set of scales next to a box of plastic baggies, marijuana seeds, pipes, hemostats, roach clips, six one-quart baggies of processed marijuana, and seven marijuana stalks.

Thomas Wood testified that he lived with his parents in their house two months a year and lived the remainder of the year in Arkansas. He admitted visiting the marijuana patches, asserting that he and his brother had come across them while looking for landscape plants pursuant to a Forest Service permit. He denied planting, grooming, or watering the marijuana, although he did admit he had picked some leaves for personal

use. He also admitted throwing down some seeds by the Kiamichi River several miles from the three patches under surveillance and stated that the plants in the car had come from the river. He said that he and his brother had agreed to go to the three patches and took turns driving there. David Wood's testimony was consistent with that of his brother. Both defendants admitted using marijuana and growing it for personal use but denied selling it or growing the plants in the three patches.

On appeal, both defendants contend that: 1) the evidence is insufficient to support their convictions on any count; 2) the court erred in its instruction on the definition of "manufacture" as used in 21 U.S.C. § 856(a)(1); 3) the court erred by including in its conspiracy instruction a reference to the count that was dismissed before trial; 4) the court incorrectly calculated their sentences by including in the drug quantity amounts allegedly possessed by defendants for their personal use; and 5) the court erroneously enhanced their sentences for obstruction of justice based on perjured testimony. In addition, David Wood argues that he was denied effective assistance of counsel when the court denied his request for a new attorney or alternatively for a continuance. Thomas Wood argues individually that the evidence was insufficient to support his conviction under section 856(a)(1) for maintaining a place for the purpose of distributing or using marijuana because the place in question was owned by his parents and he only stayed there two months a year.

## II.

Immediately prior to trial, the court received a complaint from David Wood indicating that he was not satisfied with his attorney's preparation for trial. The court held a short hearing on the matter but took no sworn testimony. Mr. Wood asserted that he had been out-of-state on one of the dates the government alleged he appeared on tape at the marijuana patch. Mr. Wood stated that although he had informed his lawyer, the lawyer had not followed up on it. The attorney responded that he had originally thought Mr. Wood's alibi was good and had

filed an alibi defense. Subsequently, however, he and the government agents discovered that the report misstated the date by two days and that Mr. Wood did not have alibi evidence for the actual date shown on the videotape. Mr. Wood also asserted that the government report contained mistakes and that he did not have an opportunity to point them out to his attorney. The attorney responded that he had been over the report several times, and that although he spoke with Mr. Wood almost daily, Mr. Wood had not indicated until the morning of trial that he wanted to review the material with his counsel. The attorney stated that he felt prepared to go to trial. The court denied Mr. Wood's request for a new attorney, and the trial proceeded as scheduled. On appeal, Mr. Wood contends that he was denied effective assistance of counsel because he and his attorney were not ready for trial. He contends that if he had been able to go over the report with counsel to point out disputed testimony, the result would have been different.

■ This court has held that "[t]he preferred avenue for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack under 28 U.S.C. § 2255." *Beaulieu v. United States*, 930 F.2d 805, 806 (10th Cir.1991). We have pointed out that such allegations usually are not appropriately considered on direct appeal because the defendant may not realize he has a meritorious claim until he begins collateral proceedings with new counsel, and because "ineffectiveness claims frequently require consideration of evidence not contained in the record on direct appeal." *Id.* at 807. Nonetheless, we have recognized rare occasions in which we can make a fair evaluation of an ineffectiveness claim on direct appeal: "situations where the defendant is no longer represented by trial counsel and it is evident that resolution of the ineffectiveness claim would not be substantially aided by further development of the record." *Id.* We do not believe this is that rare case. Although Mr. Wood is represented by new counsel on direct appeal, we cannot be sure that the informal colloquy held by the trial court immediately before trial adequately developed the facts underly-

ing Mr. Wood's claims. Accordingly, we decline to consider the claims without prejudice to Mr. Wood's ability to pursue them in a collateral proceeding should he choose to do so.[2]

## III.

Both defendants contend that the evidence was insufficient to support their convictions on all counts. On appeal, we must view all the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. *Richard*, 969 F.2d at 856. The resolution of conflicting evidence and the assessment of credibility are within the province of the jury. *Id.* The evidence must raise more than a mere suspicion. *Id.* It must be substantial and allow us to determine that a reasonable jury could find defendants guilty beyond a reasonable doubt. *Id.*

## A.

■ To establish a conspiracy under 21 U.S.C. § 846, the government must prove an agreement to violate the law, knowledge of the objectives of that agreement, knowing and voluntary participation in it, and interdependency between the conspirators. *See United States v. Emmons*, 24 F.3d 1210, 1217 (10th Cir.1994). Although we agree with defendants that mere presence at the scene is not enough to establish knowing participation in a conspiracy, *see Richard*, 969 F.2d at 856, the evidence set out above clearly permitted the jury to reasonably infer that defendants entered into a knowing and voluntary agreement to violate the substantive drug laws alleged in the indictment.

## B.

■ Both defendants contend that the evidence was insufficient to support their convictions for manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). For purposes of section 841(a)(1), "[t]he term 'manufacture' means the production, preparation, propagation, compounding, or processing of a drug or other substance, ... and includes any packaging or repackaging of such substance." 21 U.S.C. § 802(15). "The term 'production' includes the manufacture, planting, cultivation, growing, or harvesting of a controlled substance." *Id.* § 802(22). The evidence at trial is clearly sufficient to support defendants' convictions for manufacturing marijuana. Although they contend that they only picked some leaves, the evidence that they cultivated, grew and/or harvested marijuana is substantial. We thus affirm their convictions on this charge.

## C.

Defendants also challenge the sufficiency of the evidence with respect to their convictions under section 841(a)(1) for possessing marijuana with intent to distribute. They point to their testimony that they possessed the marijuana only for personal use and to the lack of direct evidence of sales or distribution to third parties. Their argument, however, is based on their version of the facts and ignores substantial evidence indicative of the requisite intent to distribute.

■ Possession with intent requires the government to establish that defendants knowingly possessed the drug with the specific intent to distribute it. *See United States v. Hager*, 969 F.2d 883, 888 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992). Constructive possession is sufficient and may be proved by evidence that defendants had knowing dominion or control over the drugs and the premises where they were found. *Id.* A large quantity of the drug will support a reasonable inference that a defendant intended to distribute it. *United States v. Parrish*, 925 F.2d 1293, 1297 (10th Cir.1991). Evidence admitted at trial tended to prove that the marijuana defendants admitted that they possessed for personal use was of a quantity large enough to permit the jury to infer that the drug was intended for distribution. In

---

**2.** We have recently revisited the issue of the appropriate vehicle by which a claim of incompetent counsel may be pursued. *See United States v. Galloway*, 32 F.3d 499, 501–02 (10th Cir.1994), *reh'g en banc granted*, No. 93–4169, Dec. 21, 1994. We do not believe the en banc opinion to be issued in *Galloway* will affect our determination here that the claims may not appropriately be resolved on direct appeal.

addition, the presence of scales and baggies at the residences of both defendants supports a reasonable inference of an intent to distribute. Accordingly, we affirm defendants' convictions under section 841(a)(1) for possession with intent to distribute.

### D.

To establish a violation of 21 U.S.C. § 856(a)(1), maintaining a place for the purpose of manufacturing, distributing or raising a controlled substance, the government must prove that a defendant knowingly opened or maintained a place for the purposes listed in the statute. *See United States v. Williams,* 923 F.2d 1397, 1403–04 (10th Cir.1990), *cert. denied,* 500 U.S. 925, 111 S.Ct. 2033, 114 L.Ed.2d 118 (1991). Defendant Thomas Wood argues that the evidence is insufficient to support his conviction for violating this statute because he did not "maintain" the place in question.

■ The undisputed evidence at trial established that although the place at issue was owned by Thomas Wood's parents, Mr. Wood lived there two months a year during the summer. We recently considered whether analogous facts provided sufficient evidence to sustain a conviction under section 856(a)(1). *See United States v. Verners,* 53 F.3d 291, 294–95 (10th Cir.1995). In *Verners,* the defendant was charged under section 856(a)(1) with respect to his activity at a house owned by his mother. Although the defendant did not actually live at the house, we upheld his conviction on the basis of evidence of illegal drug activity found in the room under his control. Here, as in *Verners,* although Thomas Wood did not own the residence at issue, the agents discovered drug trafficking evidence in the rooms that he controlled while he lived there. These facts are sufficient under *Verners* to support his conviction under section 856(a)(1).

### IV.

Defendants raise two challenges to the jury instructions. They contend that the court erred in its definition of the term "manufacture" and that the court erroneously included a reference to the dismissed count in its conspiracy instruction. These arguments are without merit.

■ Defendants assert that the court erred in instructing the jury that the term manufacture includes cultivation and harvesting. As we have discussed in Part III.B supra, the term manufacture includes the term production, *see* 21 U.S.C. § 802(15), and the term production, in turn, includes cultivation and harvesting, *see id.* § 802(22). The instruction was therefore proper.

Defendants further argue that the trial court erred in its drug conspiracy instruction by telling the jury that one of the substantive laws defendants allegedly conspired to violate was 21 U.S.C. § 856(a)(2), which prohibits managing or controlling a building and making it available for use for the purpose of illegal drug activity. The count charging defendants with a substantive offense under section 856(a)(2) was dismissed by the government before trial as multiplicious to the count which charged defendants with a substantial violation of maintaining a place for the purpose of illegal drug activity in violation of section 856(a)(1). Defendants argue that including both substantive offenses in the conspiracy count was also multiplicious. We disagree.

■ Multiplicity occurs when more than one count of an indictment cover the same criminal behavior. *See United States v. Morehead,* 959 F.2d 1489, 1505 (10th Cir. 1992), *reheard en banc on other grounds,* 971 F.2d 1461 (10th Cir.1992). Multiplicious counts are improper because they allow multiple punishments for a single criminal offense. *See id.* We have held that counts charging substantive violations of section 856(a)(1) and section 856(a)(2) separately are multiplicious when they both concern the same place and the same time period. *Id.* at 1506–07. In this case, however, defendants were charged in a single count with a single conspiracy to commit several substantive crimes. Because defendants were subject to only one punishment for committing a single conspiracy offense, the fact that the conspiracy alleged an agreement to commit multipli-

cious offenses does not render the conspiracy count itself multiplicious.[3]

## V.

Finally, we turn to defendants' challenges to their sentences. Defendants contend that the trial court erred in failing to exclude from its calculation of drug quantity the amount of marijuana defendants assert that they possessed for personal use. They also argue that the court erred in enhancing their sentences for obstruction of justice upon concluding that defendants had testified falsely at trial. These arguments are without merit.

▇▇▇ Under U.S.S.G. § 1B1.3(a)(2) and § 3D1.2(d), as defendants concede, the sentencing court must group all the counts of conviction. The offense level applicable to this group is that corresponding to the aggregated quantity of marijuana for all the counts in the group. *See* U.S.S.G. § 3D1.3(b). Defendants argue that only the marijuana they possessed with intent to distribute should have been included, and that the marijuana they possessed for personal use should have been excluded from the calculation of the aggregate amount. This argument, however, ignores the fact that defendants were convicted of *manufacturing* marijuana. Thus, the entire quantity of marijuana manufactured by defendants was properly included in the aggregate drug quantity amount.[4]

The district court enhanced defendants' offense level under U.S.S.G. § 3C1.1 for ob-

structing justice based on the court's determination that defendants had committed perjury by testifying falsely at trial. The court rejected defendants' testimony that they had just happened across the marijuana patches and were not growing the plants as false in light of the video footage clearly depicting defendants engaged in the cultivation of those plants. On appeal, defendants contend that their testimony was not false because the tape showed them only picking leaves.

▇▇▇ Enhancement under section 3C1.1 is proper when a defendant has given false testimony concerning a material matter with the willful intent to provide false testimony rather than as a result of confusion, mistake, or faulty memory. *See United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993); *United States v. Arias–Santos,* 39 F.3d 1070, 1076–77 (10th Cir.1994). The sentencing judge must make "a specific finding that independent of the jury verdict, defendant committed perjury." *See Arias–Santos,* 39 F.3d at 1077. Here the court properly reviewed the evidence and made the independent findings necessary to establish that defendants' trial testimony constituted perjury which obstructed justice. *See id.* at 1076. Although defendants contend that the court erred in rejecting their testimony, the record supports the court's determination even when viewing defendants' testimony most favorably to them. Accordingly, we find no ground for concluding that the enhancement was improper.

---

**3.** Defendants do not argue that the conspiracy and the substantive offense were multiplicious. Such an argument would fail. "Congress intended to allow imposition of separate sentences for a conspiracy conviction under 21 U.S.C. § 846 and for the substantive drug offenses that form the object of the conspiracy." *United States v. Johnson,* 977 F.2d 1360, 1371 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1024, 122 L.Ed.2d 170 (1993).

**4.** Defendants' reliance upon *United States v. Kipp,* 10 F.3d 1463 (9th Cir.1993), is therefore misplaced. In *Kipp,* the manufacture of drugs was not involved in the common scheme or plan. Here defendants have never argued that the manufacturing count was improperly grouped with the other counts of conviction and the quan-

tity involved in that count was thus properly included in the aggregate. Moreover, the sentencing judge here found as a matter of fact that all the marijuana possessed by defendants was possessed with intent to distribute.

> Further, it is inconceivable to the Court that one who is convicted of manufacturing as well as possessing marijuana with intent to distribute would possess drugs that were not for sale. There is sufficient evidence in the record of this hearing, as well as in the Presentence Report, to preponderate a finding that you and your co-defendant possessed for distribution purposes approximately one hundred seven kilograms of marijuana.

Aplee.App., vol. II, at 277.

We AFFIRM the convictions and sentences.