**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 18, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JAMES ANTHONY CLARK, a/k/a
Jamie,

      Defendant - Appellant.

No. 12-3008
(D.C. No. 2:09-CR-20119-JWL-8)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH, EBEL,** and **MATHESON,** Circuit Judges.

James Clark was indicted on one count of conspiracy to distribute and possess

with intent to distribute cocaine, methamphetamine ("meth"), and marijuana. A special

jury verdict indicated that he was convicted of the charge as to meth and marijuana. The

district court sentenced him to 292 months in prison.

Mr. Clark appeals only his sentence. He argues (1) there was a fatal variance

between his indictment and the evidence; (2) the district court's drug quantity calculation

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

at sentencing was incorrect; and (3) the court erred by refusing to give him a two-level downward offense adjustment for his minor role in the conspiracy. He also moves to file a supplemental pro se brief. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), we affirm Mr. Clark's sentence and deny his motion.

## I. **BACKGROUND**

Mr. Clark was indicted on a single count of conspiring "to distribute and possess with intent to distribute more than 5 kilograms of a mixture and substance containing a detectable amount of cocaine; . . . more than 50 grams of meth; and . . . a mixture and substance containing a detectable amount of marijuana," in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii)(II), (b)(1)(A)(viii), and (b)(1)(D). ROA, Vol. I at 55. The indictment also charged him with aiding and abetting the conspiracy under 18 U.S.C. § 2. Several conspiracy members cooperated with the Government. Defendants Justin Selby and Alfred Anaya were tried with Mr. Clark.

## A. *Evidence at Trial*

Evidence at trial showed an extensive drug trafficking organization ("DTO") that bought, sold, and transported marijuana, cocaine, and meth. Esteban Magallon-Maldanado and Cesar Bonilla-Montiel headed the DTO, which included about twenty individuals. Curtis Crow ran operations for the DTO in Kansas. The evidence included testimony from several witnesses and records of multiple hotel, airline, and car rental costs incurred by the DTO for drug transportation.

Mr. Crow testified that Mr. Clark, a friend since childhood, was heavily involved with the DTO and knew about his drug dealing. Mr. Crow explained that Mr. Clark worked for him in the DTO and handled his drug sales when he was out of town. On one occasion, Mr. Clark collected $7,000 from a drug buyer for Mr. Crow while he was out of town.

Mr. Clark's relationship with the DTO began in October 2008, when Mr. Crow and Tyson Ledford traveled to California to sample marijuana and meet with suppliers. Mr. Crow and Mr. Ledford testified that Mr. Clark joined them on the trip, during which he tested marijuana and met with suppliers at a restaurant. Mr. Ledford added that, during the trip, Mr. Crow paid the expenses and gambling costs for the group. Mr. Clark and Mr. Ledford flew home ahead of Mr. Crow, and Mr. Clark picked him up from the train station when he returned to Kansas. Mr. Crow testified that he paid Mr. Clark with a half-pound of marijuana for taking the trip.

Mr. Crow also testified that, in November 2008, Mr. Clark agreed to rent a car in his own name and drive it to California with Mr. Crow to exchange $75,000 cash for 80 pounds of marijuana. Mr. Clark initially planned to transport all 80 pounds back to Kansas in the rented car for a $5,000 payment from Mr. Crow. During the trip to California, Mr. Clark helped Mr. Crow and other DTO members package the drugs. He then heard about a cocaine shipment that the DTO had lost as it was being smuggled from Mexico to California. Mr. Bonilla-Montiel and Mr. Crow testified that, after learning this information, Mr. Clark got cold feet and had to be convinced to transport half of what he

-3-

had originally agreed—40 pounds—in exchange for 3 pounds of marijuana from Mr. Crow and $4,500 from Mr. Bonilla-Montiel.

In 2009, Mr. Clark began distributing marijuana for Mr. Crow in Kansas. Mr. Crow estimated that he supplied Mr. Clark with 20 pounds of marijuana in 2-3 pound increments. Mr. Crow also "fronted" smaller amounts of cocaine to Mr. Clark on credit, which Mr. Clark was supposed to repay after he had sold the cocaine. Mr. Ledford testified that he bought marijuana directly from Mr. Clark and that he saw marijuana and cocaine at Mr. Clark's house. Tiffani DuPaul, Mr. Clark's ex-girlfriend, and Noah Adams, another DTO member, also testified that Mr. Clark sold marijuana, cocaine, and meth for Mr. Crow, and that they saw marijuana and cocaine at Mr. Clark's house.

On March 21, 2009, Mr. Clark accompanied Mr. Crow and other DTO members on a test ride in Mr. Crow's stepfather's plane. Mr. Bonilla-Montiel and Mr. Ledford testified that, during this gathering, Mr. Clark agreed to attend aviation school so that he could pilot the plane if the DTO decided to purchase it to transport drugs.

On April 8, 2009, Mr. Clark overdosed on cocaine and heroin. Rachel Teasley, a friend with whom Mr. Clark used drugs that weekend, testified that she and her boyfriend supplied the heroin, and Mr. Clark supplied them with marijuana and cocaine. She also testified that, after his overdose, he returned to her home where he tried to sell cocaine to her and her boyfriend. He also asked her if she knew anyone who would buy some meth.

After his overdose, Mr. Clark owed $10,000 to Mr. Crow. To repay the debt, Mr. Clark worked for Mr. Crow. Mr. Crow, Mr. Ledford, and Mr. Adams all testified that, as

-4-

part of his debt repayment, Mr. Clark registered in his name a Honda Ridgeline truck that the DTO used for drug transportation. Mr. Ledford added that Mr. Clark told him the Ridgeline had hidden components for transportation of drugs that the police could not detect.

Mr. Crow testified that, also after the overdose, Mr. Clark managed Mr. Crow's sales of meth to another DTO member, Justin Selby, while Mr. Crow was in California. Mr. Bonilla-Montiel testified that before this trip, Mr. Crow left with Mr. Clark a green box that stored marijuana, cocaine, and meth. When Mr. Bonilla-Montiel and Mr. Crow returned from California, they went to Mr. Clark's house to pick up the drug-sale proceeds and the remaining drugs. Mr. Clark did not have enough money to pay for the drugs that he had used, so Mr. Crow asked Mr. Clark to drive a shipment from California to Kansas to work off that debt.

In late April 2009, Mr. Crow no longer wanted to do business with Mr. Clark and took over distribution to Mr. Clark's customers. Mr. Clark relocated from Kansas to Florida, where officers arrested him on other charges.

## B. *Rule 29 Motion and Conviction*

After the prosecution presented its evidence, Mr. Clark moved for a directed verdict of acquittal under Federal Rule of Criminal Procedure 29. The district court overruled his motion, stating that there was "evidence from which a reasonable jury could find [Mr. Clark guilty] beyond a reasonable doubt." Aplee. Br. at Attach. 1. He renewed his motion at the close of evidence, and the court again denied it.

-5-

The jury found Mr. Clark guilty of the single count of conspiracy charged in the indictment. The jury also completed a special verdict form, which found that Mr. Clark had "conspired to distribute and possess with intent to distribute . . . [m]ore than 50 grams of methamphetamine" and "[a] mixture and substance containing a detectable amount of marijuana," but not "[m]ore than 5 kilograms of a mixture and substance containing a detectable amount of cocaine." ROA, Vol. I at 298.

## C. *Sentencing*

The U.S. Probation Office's presentence investigation report ("PSR") for Mr. Clark attributed 82 pounds of marijuana and a half-pound of meth to Mr. Clark to reach a base offense level of 28. It also added a two-level enhancement for use of a firearm and a two-level enhancement for obstruction of justice. Combined with his criminal history level of V, this offense level of 32 yielded a Guidelines range of 188 to 235 months of imprisonment.

Both Mr. Clark and the Government objected to the drug quantity calculation. Mr. Clark also objected to not receiving a two-level "minor participant" reduction under U.S.S.G. § 3B1.2(b). The Government sought a two-level increase for Mr. Clark's managerial role in the conspiracy under § 3B1.1(c).

At the sentencing hearing, the district court heard evidence and argument from each side. The Government presented a table outlining all of the conspiracy's transactions between October 2008, when Mr. Clark joined the DTO, and September 21,

2009, when the conspiracy ended. Perry Williams, the DEA case agent for the investigation of the DTO, testified about the evidence supporting the table calculations.

The district court determined that "the drug quantities shown . . . on the first seven lines" of the Government's table—transactions that took place between October 2008, when Mr. Clark joined the conspiracy, and April 21, 2009, when he withdrew—were "within the scope of his agreement and foreseeable to him." ROA, Vol. II at 3567. This relevant conduct included 182.3 kg of marijuana, 15 kg of cocaine, and 11 kg of meth. The sentencing court added a two-level enhancement for use of a firearm, for a final offense level of 36. ROA, Vol. II at 3566, 3571. Combined with Mr. Clark's criminal history level of V, this yielded a Guidelines range of 292-365 months of imprisonment. Further details regarding the relevant conduct determination will be presented below.

The court denied the Government's motion seeking a two-level increase for managerial role and Mr. Clark's request for a "minor participant" reduction. It noted that he "played numerous roles . . . and was an integral member of the conspiracy." *Id.* at 3571. The court considered the total amount of drugs for which Mr. Clark was accountable, the role he played in the conspiracy, and his criminal history before sentencing him to 292 months of imprisonment, the bottom of the Guidelines range.

## II. **DISCUSSION**

Mr. Clark first argues that a fatal variance occurred at trial—the Government failed to prove the single conspiracy alleged in the indictment. But he does not challenge his conviction, only his sentence. Second, he contends that his sentence was based on

co-conspirator conduct that was improperly attributed to him.  Third, he argues that the district court erred by failing to apply a downward adjustment for the minor role that he played.  Finally, he moves for permission to file a pro se supplemental brief.

## A.  *Variance*

"A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment."  *Dunn v. United States*, 442 U.S. 100, 105 (1979).  A variance is only "fatal"—reversible error— if the defendant's substantial rights were prejudiced.  *United States v. Powell*, 982 F.2d 1422, 1431 (10th Cir. 1992).

The variance claim here argues insufficient evidence to support the jury's finding of a single conspiracy as indicted.  *See United States v. Windrix*, 405 F.3d 1146, 1153 (10th Cir. 2005).  "Where an indictment charges a single conspiracy, but the evidence presented at trial proves only the existence of multiple conspiracies, a variance occurs."  *United States v. Caldwell*, 589 F.3d 1323, 1328 (10th Cir. 2009).  Mr. Clark says that happened here.  We disagree.

We review de novo whether there was a variance.  *Id.*  In doing so, "we view the evidence and draw all reasonable inferences therefrom in the light most favorable to the government, asking whether a reasonable jury could have found [the defendant] guilty of the charged conspirac[y] beyond a reasonable doubt."  *United States v. Carnagie*, 533 F.3d 1231, 1237 (10th Cir. 2008) (stating standard of review for a variance claim).

Mr. Clark argues that a variance between the conspiracy charged and the evidence demonstrates that Mr. Clark was involved in two small meth and marijuana conspiracies

-8-

and not one single conspiracy. He further argues that the district court's attribution of drug amounts to him was clearly erroneous and that he was thereby substantially prejudiced at sentencing. In particular, he argues that the alleged variance shows that drug amounts from activities of individuals with whom he did not conspire were wrongly imputed to him.

The evidence at trial included testimony that Mr. Clark sold meth, cocaine, and marijuana for Mr. Crow; transported $75,000 in drug proceeds to California; collected $7,000 as drug payment from DTO members; received cocaine from the DTO on credit and distributed it to others; registered in his name the DTO's Ridgeline, which he knew had hidden compartments for drugs; and introduced Mr. Crow to new customers. This evidence was sufficient for a reasonable jury to convict Mr. Clark of the single conspiracy as charged beyond a reasonable doubt. We conclude there was no variance as Mr. Clark contends and that his reliance on this argument to challenge his sentence fails.

B. *Relevant Conduct*

Mr. Clark also challenges the district court's relevant conduct calculation, arguing that it should not have included drug transactions that either were not part of his jointly undertaken criminal activity or were not foreseeable to him.

1. **Legal background**

"The sentencing judge's assessment of the drug quantity attributable to a convicted conspirator is a fact finding determined by a preponderance of the evidence which we review for clear error." *United States v. Arias-Santos*, 39 F.3d 1070, 1078

-9-

(10th Cir. 1994). A clearly erroneous determination must be "simply not plausible or permissible in light of the entire record on appeal." *United States v. Morales,* 108 F.3d 1213, 1225 (10th Cir. 1997) (quotations omitted).

District courts calculate sentences by first determining the Guidelines section applicable to the statute under which the defendant was convicted. U.S.S.G. § 1B1.1(a)(1). The jury convicted Mr. Clark under 21 U.S.C. § 846 for conspiracy to possess with intent to distribute marijuana and meth. Section 2D1.1 of the Guidelines applies to "Unlawful Manufacturing, Importing, Exporting, or Trafficking" of drugs, including conspiracy to possess with intent to distribute. Under that Guideline, the amount of drugs attributable to Mr. Clark determines his base offense level. *Id.* § 2D1.1(a)(5).

"The government has the burden of proving the quantity of drugs for sentencing purposes by a preponderance of the evidence." *United States v. Hooks*, 65 F.3d 850, 854 (10th Cir. 1995) (quotations omitted). The drug amount attributable to Mr. Clark at sentencing is not necessarily the overall amount involved in the conspiracy for which he was convicted or the amount from the transactions in which he personally participated. Instead, the sentencing court considers a set of factors known as "relevant conduct." U.S.S.G. § 1B1.3.

Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly

-10-

undertaken criminal activity." *Id.* § 1B1.3(a)(1)(A), (B). A defendant is therefore "accountable for all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *Id.* §1B1.3, cmt. n.2. Each member of a conspiracy may have had a different scope of jointly undertaken criminal activity and therefore different relevant conduct. *See United States v. Melton*, 131 F.3d 1400, 1404 (10th Cir. 1997); *see also* U.S.S.G. § 1B1.3, cmt. n.2.

The district court may find, by a preponderance of the evidence, that transactions were part of the defendant's jointly undertaken criminal activity even if they were not part of the charged or convicted conspiracy. U.S.S.G. § 1B1.3(a)(1)(B) (defining "jointly undertaken criminal activity" as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as conspiracy").

2. **The district court's determination of Mr. Clark's relevant conduct**

At the sentencing hearing, the district court heard evidence and argument from both Mr. Clark and the Government. The Government argued that the drug quantity calculation in the PSR was too low because it did not include all of the drug transactions that took place after Mr. Clark entered the conspiracy. It presented testimony and evidence to argue that the drug transactions reflected in the drug table it prepared were foreseeable to Mr. Clark and accurately reflected his involvement in the DTO. The

-11-

Government said it was not attempting to attribute all of the DTO's drug transactions to Mr. Clark and had made specific determinations for each defendant.

Mr. Clark objected to the court's consideration of the DTO's transactions that took place after Mr. Clark left Kansas and the attribution of drugs from transactions in which he was not directly involved. He argued that he acted "on his own" as a drug addict and that he was not a part of the DTO's "jointly undertaken activity." ROA, Vol. II at 3544-45. He contended that he was only following Mr. Crow's orders "[t]o get his fix in." *Id.* at 3545. He asked the court to consider the special verdict form on which the jury determined that he was not guilty of conspiracy to distribute cocaine.

Before making its relevant conduct determination, the district court considered the totality of the circumstances, the PSR, the Guidelines, the objections and sentencing submissions from both parties, and the evidence from trial. The district court relied heavily on evidence from trial, which, as detailed previously, included testimony about Mr. Clark's drug dealing and his other actions to benefit the DTO and help the conspiracy meet its drug dealing goals.

The district court found by a preponderance of the evidence that Mr. Clark was significantly involved with the DTO through his transporting, storing, delivering, and collecting drugs and proceeds at Mr. Crow's direction. It therefore found that all of the DTO's transactions between October 2008, when Mr. Clark joined, and April 21, 2009, when he withdrew, including the DTO's cocaine sales, were "within the scope of his

agreement" and "foreseeable to him," and attributed the drugs in those transactions to Mr. Clark as relevant conduct. ROA, Vol. II at 3565-67.

3. **Analysis**

Mr. Clark argues that several examples in the Guidelines commentary to § 1B1.3 show that he should not be held accountable for the DTO's transactions in which he was not directly involved. U.S.S.G. § 1B1.3, cmt. n.2(c). But those examples apply to individuals with very little involvement in a conspiracy.[1] The district court found that Mr. Clark was extensively involved with the DTO, acting as a "wingman" for Mr. Crow's Kansas operations. ROA, Vol. II at 3566. The Guidelines examples Mr. Clark relies upon do not apply to this case. We conclude, based on our review of the record, that the district court's relevant conduct determination was not clearly erroneous.

Mr. Clark's argument that the district court should have attributed only the drug quantities for which the jury convicted him also lacks merit. First, the burden of proof

_____

[1] Mr. Clark relies, for example on illustration 5, which explains that a defendant who "knows about her boyfriend's ongoing drug activity, but agrees to participate on only one occasion by making a delivery for him," is accountable only for the drugs in that one transaction. U.S.S.G. § 1B1.3, cmt. n.2(c)(5). But Mr. Clark was involved in much more than just one transaction. Even illustration 7, arguably the most generous illustration to Mr. Clark's circumstances, is unavailing. Illustration 7 explains that a defendant recruited by a drug dealer to sell a certain amount of one type of drug is accountable only for the drugs he sells even if he knows about the dealer's larger conspiracy. *Id.* at § 1B1.3, cmt. n.2(c)(7). But this illustration only applies if the defendant agrees to nothing more. Here the district court found by a preponderance of the evidence that Mr. Clark agreed with the goals of the conspiracy to distribute cocaine, meth, and marijuana on a large scale, and there is record evidence supporting that conclusion.

for relevant conduct at sentencing is preponderance, not the beyond a reasonable doubt standard applicable at trial.  *See United States v. Todd*, 515 F.3d 1128, 1137 (10th Cir. 2008).  Second, the district court can find that relevant conduct includes co-conspirator conduct that was within the scope of the conspiracy and reasonably foreseeable to the defendant even if a jury acquitted the defendant of that conduct.  *Arias-Santos*, 39 F.3d at 1078.  The district court's determination that Mr. Clark's relevant conduct included DTO transactions that were not part of his conviction was not legal error and, because the court's determination was consistent with the evidence, was not clear factual error.  *See United States v. Torres,* 53 F.3d 1129, 1144 (10th Cir. 1995).  We therefore affirm the district court's relevant conduct determination.

## A. *Minor Role*

Under § 3B1.2(b) of the Guidelines, courts may reduce a defendant's offense level by two levels if he was a "minor participant" in the offense.  A defendant is eligible for a minor-participant reduction only if he "plays a part in committing the offense that makes him substantially less culpable than the average participant."  U.S.S.G. § 3B1.2, cmt. n.3(a).  We evaluate this issue based in part on his "knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense."  *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277 (10th Cir. 2004) (quotations omitted).  At sentencing, the district court denied Mr. Clark's request for a minor participant reduction, noting that Mr. Clark "played numerous roles . . . and was an integral member of the conspiracy."  ROA, Vol. II at 3571.

"We review a sentencing court's refusal to award a defendant minor or minimal participant status for clear error [and] give due deference to the court's application of the sentencing guidelines to the facts." *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1131 (10th Cir. 2003) (quotations omitted). We review whether the district court clearly erred in finding that Mr. Clark did not prove by a preponderance of the evidence that he was entitled to a minor participation adjustment. *United States v. Martinez*, 512 F.3d 1268, 1275 (10th Cir. 2008).

Mr. Clark argues that he was "substantially less" culpable than Mr. Crow, Mr. Magallon-Maldanado, Mr. Bonilla-Montiel, and another conspiracy member, Jaime Rodriguez. Aplt. Br. at 41. He maintains that he dealt with no more than 4% of the total drugs charged in the conspiracy, was not involved with most of the named co-conspirators, and had no knowledge of the meth or cocaine conspiracy. But Mr. Clark only compares himself to the DTO leaders and another major player in the organization. Several conspiracy members, including Mr. Ledford and Mr. Adams, were less involved and less culpable than Mr. Clark based on the evidence from trial. Defendants in mid-level roles in conspiracies are not "substantially less culpable than the average participant" and therefore are not entitled to a minor participant reduction. *See United States v. Garcia*, 987 F.2d 1459, 1461 (10th Cir. 1993).

At sentencing, the district court considered the amount of drugs attributable to Mr. Clark, his criminal history, and "the role which he played in this offense," which "was right smack dab in the middle of things." ROA, Vol. II at 3592. It therefore determined

-15-

that the minor participation reduction was inappropriate. Mr. Clark provides no evidence that the district court's determination was "not plausible or permissible in light of the entire record on appeal." *Morales,* 108 F.3d at 1225 (quotations omitted). Based on our review of the record, we agree and therefore find no clear error.

## B. *Motion To File Supplemental Pro Se Brief*

On November 14, 2012, Mr. Clark submitted a pro se supplemental brief arguing that the district court erred by denying his request to substitute counsel before trial. On November 28, 2012, his counsel submitted, on his behalf, a motion to permit filing of the supplemental brief, arguing that the issue was not frivolous but "was not sufficiently strong to be included in the opening brief." Aplt. Mot. at 2. The issue also was omitted from the reply brief submitted by Mr. Clark's counsel.

We deny Mr. Clark's motion to permit filing of a supplemental pro se brief. We generally deny such filings when the defendant is represented by counsel who vigorously argues for the merits of his case through the filing of both an opening and a reply brief. *See United States v. McDermott*, 64 F.3d 1448, 1450 n.1 (10th Cir. 1995) ("[The defendant] submitted his own briefs, but to the extent that he raises additional issues, we do not address them, invoking our policy of addressing on direct appeal only those issues raised by counsel."); *United States v. Guadalupe*, 979 F.2d 790, 795 (10th Cir. 1992) (denying the defendant's motion for leave to file a supplemental brief because he was "represented by thoroughly competent counsel").

## III.  **CONCLUSION**

The district court did not commit clear error by (1) attributing to Mr. Clark as relevant conduct all of the DTO's drug transactions while he was a member of the conspiracy or (2) denying his request for a downward departure based on minor participation.  We therefore affirm the district court's sentence of 292 months in prison.  We deny his motion to file a pro se supplemental brief.  Finally, we grant his motion to supplement the record on appeal.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge