FILED
United States Court of Appeals
Tenth Circuit

June 28, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JESUS FIGUEROA-LABRADA, a/k/a
Chuy,

      Defendant - Appellant.

No. 12-6090

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:11-CR-00234-HE-3)**

---

O. Dean Sanderford, Assistant Federal Public Defender, (Warren R. Williamson, Interim Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

David P. Petermann, Assistant United States Attorney (Sanford C. Coats, United States Attorney, Suzanne Mitchell, Assistant United States Attorney, with him on the brief), Office of the United States Attorney for the Western District of Oklahoma, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **HOLMES, MURPHY,** and **MATHESON,** Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

# I. INTRODUCTION

In 2011, a methamphetamine dealer in Oklahoma City and several of his buyers and sellers were indicted for their alleged involvement in a methamphetamine distribution conspiracy. Jesus Figueroa-Labrada, one of the buyers, was convicted of conspiring to possess methamphetamine with intent to distribute. Mr. Figueroa was involved in only three of the conspiracy's eight drug transactions, but his presentence investigation report ("PSR") calculated his advisory sentencing range under the U.S. Sentencing Guidelines (the "Guidelines") by attributing to him as relevant conduct all of the methamphetamine distributed through the conspiracy, more than doubling his Guidelines range. The sentencing court adopted the PSR's Guidelines calculation to determine Mr. Figueroa's sentence but made no particularized findings on his relevant conduct. On appeal, Mr. Figueroa challenges (1) the district court's calculation of methamphetamine attributable to him and (2) the district court's failure to make particularized findings. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), we reverse on the second issue regarding lack of particularized findings and remand for resentencing.

# II. BACKGROUND

In December 2010, the Drug Enforcement Administration and the Department of Homeland Security began a methamphetamine distribution investigation in Oklahoma

City. The agencies wiretapped suspect Rafael Quintero-Rivas's phone. From monitoring his calls, the Government identified eight methamphetamine transactions arranged by Mr. Quintero-Rivas. Mr. Figueroa purchased methamphetamine from Mr. Quintero-Rivas on three occasions. Mr. Quintero-Rivas arranged for seller Eloy Villa to make the delivery on one occasion and seller Ivan Guzman-Torres to deliver on another. In addition, during one phone call with Mr. Figueroa, Mr. Quintero-Rivas referenced another buyer, Valente Campos, suggesting that Mr. Figueroa knew that Mr. Campos also bought drugs from Mr. Quintero-Rivas.

Police arrested seven individuals, including Mr. Figueroa, on June 7, 2011. When police arrested Mr. Figueroa, they found stored in his phone the numbers of Mr. Quintero-Rivas and two other sellers, Mr. Villa and Jose Angel Gonzalez-Gondarilla. All seven individuals—Mr. Quintero-Rivas, Mr. Figueroa, Mr. Villa, Mr. Guzman, Mr. Campos, Mr. Gonzalez, and another buyer, Mr. Lechuga—were indicted for conspiring to possess methamphetamine with the intent to distribute, among other charges.

A. *Jury Trial*

Mr. Figueroa was tried along with Mr. Quintero-Rivas, Mr. Gonzalez, and Mr. Campos. The indictment charged Mr. Figueroa with one count of conspiracy, in violation of 21 U.S.C. § 846, two counts of possession with intent to distribute methamphetamine,

in violation of 21 U.S.C. § 841(a)(1), and two counts of using a telephone to facilitate the distribution of methamphetamine, in violation of 21 U.S.C. § 843(b).

At trial, the Government produced evidence that Mr. Quintero-Rivas facilitated eight methamphetamine transactions. Only three of the eight transactions involved Mr. Figueroa. The evidence showed that the conspiracy began on April 22, 2011, when Mr. Figueroa purchased one-half ounce of methamphetamine from Mr. Quintero-Rivas. Mr. Figueroa later purchased another one-half ounce on April 28 and one ounce on May 6. The total amount of methamphetamine from the three transactions in which Mr. Figueroa was personally involved was 56.7 grams.

The evidence did not show that Mr. Figueroa was involved in any of the conspiracy's other transactions. A total of 746.19 grams of methamphetamine mixture changed hands during the conspiracy,[1] including the 56.7 grams from Mr. Figueroa's transactions. In closing argument, the prosecution maintained that all eight transactions

----

[1] In his brief, Mr. Figueroa calculates the total amount of methamphetamine mixture involved in the conspiracy as 747.25. Our calculation, based on the undisputed information on the eight transactions, yields a total of 746.19 grams of calculable methamphetamine mixture, plus two transactions classified as "small ones," for which no calculation is possible.

established a single conspiracy, making each defendant responsible for all of the methamphetamine.

The jury convicted Mr. Figueroa of conspiracy, as well as the four other counts in the indictment. The court asked the jury to complete a special interrogatory verdict form indicating for each respective defendant "the quantity or weight of methamphetamine which you find beyond a reasonable doubt was involved in the conspiracy from and after the date that defendant became a member of the conspiracy." First Suppl. ROA at 13. The verdict form gave the jury three choices: (1) 500 grams or more, (2) 50 grams or more, but less than 500 grams, and (3) less than 50 grams. The district court instructed the jury to use the verdict form to "specify [its] unanimous finding concerning the quantity of methamphetamine involved in the crime." Second Suppl. ROA at 44. The jury instructions added, "The government is required to prove the quantity of the controlled substance involved in an offense beyond a reasonable doubt." *Id.*

Mr. Quintero-Rivas and Mr. Figueroa began their dealings on April 22, 2011. The evidence showed that 746.19 grams of methamphetamine mixture changed hands among Mr. Quintero-Rivas and those charged for dealing with him. It is not clear whether the jury found there was one conspiracy that included Mr. Quintero-Rivas and the others, or whether there were instead several smaller conspiracies revolving around Mr. Quintero-Rivas, one of which was comprised of Mr. Quintero-Rivas and Mr. Figueroa. If the

-5-

former, the jury should have checked the "500 grams or more" line on the special verdict

interrogatory form for Mr. Figueroa. If the jury found that Mr. Figueroa's conspiracy

was only with Mr. Quintero-Rivas, then it correctly checked "50 grams or more, but less

than 500 grams of . . . methamphetamine" as consistent with the 56.7 grams involved in

the three transactions in which Mr. Figueroa participated. Resolution of the jury's actual

finding of one large conspiracy or several smaller ones is unnecessary to our analysis of

this appeal, except to point out that a conspiracy limited to Mr. Figueroa, Mr. Quintero-

Rivas, and 56.7 grams of methamphetamine does not support attributing 746.19 grams to

Mr. Figueroa as relevant conduct.

## B. *Presentence Investigation Report*

Although the trial evidence showed that Mr. Figueroa participated in three

transactions, the PSR included in his relevant conduct the 746.19 grams of

methamphetamine mixture from all eight transactions associated with the conspiracy.

Pursuant to U.S.S.G. § 2D1.1(c)(3), the 746.19 grams of methamphetamine mixture that

changed hands produced a base offense level of 34.[2] Combined with Mr. Figueroa's

---

[2] The Guidelines convert all drug amounts to marijuana equivalencies before
determining the base offense level. The total amount of methamphetamine in the

Continued . . .

criminal history category I, his advisory Guidelines range was 151 to 188 months. The PSR included no particularized findings to support this relevant conduct attribution.

In contrast, the PSRs for each of the other three codefendants attributed to them amounts consistent with what the jury marked on the special verdict form. Had Mr. Figueroa's relevant conduct been limited to the amount of methamphetamine involved in his transactions—56.7 grams—his base offense level would have been 26, and his Guidelines range would have been 63 to 78 months. *See* U.S.S.G. § 2D1.1(c)(7); *id.* Ch. 5, Pt. A (sentencing table).

## C. *Sentencing Hearing*

The district court began the sentencing hearing by asking Mr. Figueroa and his counsel whether they had any objections to the PSR. They did not, and his counsel stated he was ready to proceed. The judge again asked, "[I]s there any suggestion . . . of any inaccuracies in the presentence report or anything of that sort that your client has a

---

Cont.

conspiracy here is equivalent to 4,262.18 kilograms of marijuana, which produces a base offense level of 34.

concern with?"  ROA, Vol. III at 733.  Mr. Figueroa's counsel replied, "I think

everything is up to snuff as far as the PSR is concerned."  *Id.* at 734.

After the defense failed to object to the methamphetamine calculation, the

Government noted that Mr. Figueroa's PSR, which attributed 746.19 grams of

methamphetamine mixture to him, was not consistent with his special interrogatory.  This

differed from the other defendants' PSRs, which were consistent with their special

interrogatories.  The prosecution asserted that Mr. Figueroa's PSR correctly calculated

the amount.  But because the Government had failed to object to the other defendants'

PSRs, it "urg[ed] the Court to consider what Mr. [Figueroa] actually possessed" to "avoid

an [unwarranted] sentencing disparity."  *Id.* at 735.  The prosecution offered to provide

the court with a new sentencing calculation based on that amount.

The district court decided that if Mr. Figueroa's PSR calculation were correct, it

would be better to "start with a correctly calculated" Guidelines sentencing range and

have the Government file out-of-time objections to the other defendants' PSRs to fix the

disparity.  *Id.* at 736.  Notably, Mr. Figueroa's counsel did not object or make any

argument, even after the prosecution identified this issue and offered to recalculate Mr.

Figueroa's Guidelines range based on the lower amount of methamphetamine attributed

to him on the special verdict form.  The judge concluded:  "In light of the absence of

objection to the presentence report here, I will adopt the presentence report as the

findings of the Court on all undisputed factual matters referenced in it." *Id.* at 737. The court made no particularized findings on relevant conduct and failed to note the absence of particularized findings in the PSR.

The district court adopted the PSR's calculation of 746.19 grams attributable to Mr. Figueroa and its Guidelines range calculation of 151 to 188 months. Due to Mr. Figueroa's lack of any prior convictions and his good employment history, the judge gave him a below-Guidelines sentence of 120 months in prison[3] and four years of supervised release.

## III. **DISCUSSION**

On appeal, Mr. Figueroa asserts two claims of sentencing error. First, he contends that the district court erred by using the Guidelines calculation in the PSR, which attributed to Mr. Figueroa the drug amount from all eight drug transactions instead of only the amount from the three transactions in which he was directly involved. Second, he argues that even if the district court did not err in using the PSR's calculation, it erred

---

[3] This sentence included 120 months for counts 1, 3, and 8 (the conspiracy and "possession with intent to distribute" charges) and 48 months for counts 6 and 13 (the "unlawful use of a communication facility" counts), to run concurrently.

by failing to make particularized findings concerning whether all of the drug sales were properly attributable to Mr. Figueroa.

We reverse and remand on this second issue because the district court failed to make particularized findings.

## A. *Waiver or Forfeiture*

The district court adopted the PSR's relevant conduct attribution of drugs to Mr. Figueroa. The court did not make and the PSR did not contain any particularized findings to support the attribution. Mr. Figueroa's attorney did not object to the PSR's attribution of relevant conduct, request the court to make particularized findings, or object to its failure to do so. On appeal, Mr. Figueroa argues that the district court plainly erred by not making particularized findings. The Government argues that Mr. Figueroa waived this issue. The Government primarily relies on *United States v. Hernandez-Valdez*, 441 Fed. Appx. 592, 596 (10th Cir. 2011), an unpublished case that in turn relies on *United States v. Chee*, 514 F.3d 1106, 1115 (10th Cir. 2008), which does not support the Government's position.

A sentencing court must make particularized findings to support the attribution of a coconspirator's actions to the defendant as relevant conduct, whether or not the defendant asks it to do so or disputes the attribution. *See* U.S.S.G. § 1B1.3, cmt. n.2 ("In order to determine the defendant's accountability for the conduct of others . . . the court

-10-

must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake."); *United States v. Green*, 175 F.3d 822, 837 (10th Cir. 1999); *United States v. Melton*, 131 F.3d 1400, 1404 (10th Cir. 1997).  In *Melton*, we held that "[p]roper attribution at sentencing requires the district court to analyze, and make 'particularized findings' about, the scope of the specific agreement the individual defendant joined in relation to the conspiracy as a whole."  131 F.3d at 1404.  The absence of particularized findings is error subject to meaningful review.

In *Chee*, the defendant did not challenge a lack of particularized findings on relevant conduct, but rather argued that the district court failed to make particularized findings about his physical condition at sentencing, which could have justified a downward departure under U.S.S.G. §§ 5H1.1 and 5H1.4.  *Chee*, 514 F.3d at 1115.  We concluded that the defendant's failure to dispute specific findings at sentencing or even request the downward departure prevented the district court from making adequate findings and therefore waived the issue for appeal because there could be no meaningful review.  *Id.*

Here, Mr. Figueroa's failure to request particularized findings did not relieve the district court of its obligation to make them.  The question is whether his counsel's failure to object to the court's failure to make particularized findings and his acquiescence in the relevant conduct determination waived the particularized findings issue for this appeal.

-11-

At Mr. Figueroa's sentencing hearing, the district court gave defense counsel the opportunity to object to the PSR's calculations, but defense counsel did not object. The prosecution then alerted the court and defense counsel to the discrepancy between Mr. Figueroa's PSR and the PSRs of his codefendants. Defense counsel did not object at that point either. Nor did counsel object to the lack of particularized findings to support the relevant conduct determination.

Although the question is close, this case does not present a "classic waiver situation where a party actually identified the issue, deliberately considered it, and then affirmatively acted in a manner that abandoned any claim on the issue." *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1185 (10th Cir. 2009) (quotations omitted). Mr. Figueroa's counsel not only should have objected to the PSR after being alerted to the discrepancy between Mr. Figueroa's and the other defendants' PSRs, he also should have objected to the court's failure to make particularized findings. But his failure to do the latter more closely resembles inadvertent neglect than an intentional decision to abandon a claim. Mr. Figueroa's counsel did nothing to indicate that he affirmatively wished to waive the district court's requirement to make particularized findings.

We conclude that Mr. Figueroa's failure to object to the lack of particularized findings constituted forfeiture, not waiver. Because he has forfeited this issue, we review for plain error.

-12-

B. *The Role of Particularized Findings in Drug Amount Calculations*

District courts calculate sentences by first determining the Guidelines section applicable to the statute under which the defendant was convicted. U.S.S.G. § 1B1.1(a)(1). The jury convicted Mr. Figueroa under 21 U.S.C. § 846 for conspiracy to possess with intent to distribute methamphetamine. Section 2D1.1 of the Guidelines applies to "Unlawful Manufacturing, Importing, Exporting, or Trafficking," including conspiracy to possess with intent to distribute. Under that Guideline, the base offense level is determined by the amount of methamphetamine attributable to Mr. Figueroa. *Id.* § 2D1.1(a)(5).

The amount of drugs attributable to Mr. Figueroa at sentencing is not necessarily based on the overall amount involved in the conspiracy for which he was convicted or on the transactions in which he personally participated. Instead, the sentencing court considers a set of factors known as "relevant conduct." *Id.* § 1B1.3. The district court's determination of relevant conduct was therefore the critical decision in sentencing Mr. Figueroa.

Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity." *Id.* § 1B1.3(a)(1)(A), (B). "The scope of the agreement and

-13-

reasonable foreseeability are independent and necessary elements of relevant conduct under § 1B1.3(a)(1)(B)." *Green*, 175 F.3d at 837 (alterations omitted) (quotations omitted).

A defendant is therefore "accountable for all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. §1B1.3, cmt. n.2. This includes any controlled substance that was handled by another member of the conspiracy if it was "(A) in furtherance of the jointly undertaken criminal activity; and (B) reasonably foreseeable in connection with that criminal activity." *Id.*

"Proper attribution at sentencing requires the district court to analyze, and *make particularized findings* about, the scope of the specific agreement the individual defendant joined in relation to the conspiracy as a whole." *Melton*, 131 F.3d at 1404 (emphasis added) (quotations omitted). When several defendants are convicted for the same conspiracy, the sentencing court must make particularized findings regarding the scope of each defendant's "jointly undertaken criminal activity" within the conspiracy, which is "not necessarily the same as the scope of the entire conspiracy," before it can determine the amount of dugs attributable as relevant conduct. U.S.S.G. § 1B1.3, cmt. n.2. Each member of a conspiracy may have had a different scope of jointly undertaken criminal activity and therefore different relevant conduct. *See Melton*, 131 F.3d at 1404.

## C. *Plain Error*

Mr. Figueroa challenges the sentencing court's failure to make particularized findings about the scope of his jointly undertaken criminal activity when it determined the drug quantity attributed to him as relevant conduct. Although the district court did not make particularized findings of its own, it adopted the PSR's findings. Mr. Figueroa argues that this was insufficient because the PSR also failed to make particularized findings about the scope of his jointly undertaken criminal activity. Because Mr. Figueroa did not object to the PSR at sentencing, we review the district court's adoption of its findings for plain error. *United States v. Ivy*, 83 F.3d 1266, 1297 (10th Cir. 1996) ("[I]f a defendant fails to object to his presentence report, he waives his right to challenge the district court's reliance on it, unless the district court's decision to do so amounts to plain error.").

To prevail under the plain error standard, Mr. Figueroa must show "there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Teague*, 443 F.3d at 1314 (quotations omitted).

### a. *Error*

Mr. Figueroa is correct that the sentencing court must make particularized findings about the scope of a defendant's jointly undertaken criminal activity to determine the correct amount of drugs to attribute to him. *Green*, 175 F.3d at 837; *see also Melton*, 131

-15-

F.3d at 1404 ("Proper attribution at sentencing requires the district court to analyze, and make 'particularized findings' about, the scope of the specific agreement the individual defendant joined in relation to the conspiracy as a whole.").

The Government notified the court of problems with the PSR that could give rise to an appeal if the court accepted the PSR's determination. The district court nevertheless adopted the PSR "as the findings of the Court on all undisputed factual matters referenced in it" without making particularized findings. ROA, Vol. III at 737.

A sentencing court "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). The district court did not therefore err by adopting the PSR's findings. But because the sentencing court adopted the PSR as its findings, we review the information in the PSR as if it were the findings of the district court. *United States v. Sells*, 477 F.3d 1226, 1242 (10th Cir. 2009).

Mr. Figueroa's PSR included information on his charges and convictions and his offense conduct. The PSR did not, however, contain particularized findings. It did not discuss Mr. Figueroa's relevant conduct or explain how the amount of drugs that it attributed to him was reasonably foreseeable and within the scope of his jointly undertaken criminal activity. Even though the district court accepted Mr. Figueroa's undisputed PSR as its findings of fact, which is allowed under Fed. R. Crim. P. Rule 32(i)(3), it nonetheless erred by failing to supplement those findings with the necessary

particularized findings on Mr. Figueroa's relevant conduct. *See id.* (ordering reconsideration upon remand where, "[a]lthough the district court adopted the findings contained in the PSR, the PSR did not make particularized determinations with respect to" the scope of the defendant's jointly undertaken criminal activity).

   b. *Plain*

"To warrant reversal on a plain error standard of review, however, this error must also be clear or obvious under well-settled law." *United States v. Mendoza*, 543 F.3d 1186, 1192 (10th Cir. 2008) (quotations omitted). It is well-settled law in our circuit that jointly undertaken criminal activity and "reasonable foreseeability" are "independent and necessary elements of relevant conduct" that require particularized findings by the district court before it can attribute the conduct of other conspiracy members to the defendant as relevant conduct under the Guidelines. *Green*, 175 F.3d at 837 (quotations omitted). Where, as here, the PSR has not made particularized findings to support relevant conduct, we have held that sentencing courts may not simply accept the drug quantity attributed in a PSR without making particularized findings. *Sells*, 477 F.3d at 1242.

Mr. Figueroa challenges the district court's failure to make particularized findings on jointly undertaken criminal activity. *Sells* and *Green* leave no room for doubt that the district court must make particularized findings (or adopt particularized findings made in the PSR) on both jointly undertaken criminal activity and reasonable foreseeability before

-17-

attributing the actions of coconspirators to a defendant as relevant conduct.  The court's failure to make those findings on jointly undertaken criminal activity was therefore plain error.

   c. *Substantial rights*

The third factor of plain error review requires that the error affected Mr. Figueroa's substantial rights.  *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006).  "Ordinarily, an error affects substantial rights only if it affected the outcome of the district court proceedings."  *United States v. Herron*, 432 F.3d 1127, 1134 (10th Cir. 2005) (quotations omitted).  To satisfy this element of the plain error test, Mr. Figueroa "must show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different."  *United States v. Clark*, 415 F.3d 1234, 1240 (10th Cir. 2005) (quotations omitted).

The district court committed an obvious error by failing to make the necessary particularized findings.  As explained above, in a drug conspiracy, the district court is required to make particularized findings about the scope of the defendant's jointly undertaken criminal activity and the foreseeability of the coconspirator's actions to the defendant.  Once it has made particularized findings, the district court must apply the Guidelines to those findings to determine the amount of drugs that it should attribute to the defendant as relevant conduct.  The Guidelines commentary is "authoritative unless it

-18-

violates the Constitution or a federal statute, or is plainly inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

Had the district court made particularized findings, it is reasonably probable that it would have applied a different Guidelines range for sentencing, leading to a much different outcome. *Sells*, 477 F.3d at 1242. ("Upon close examination of the evidence, the district court might agree with [the defendant] that his [jointly undertaken criminal activity] was limited and decrease his [Guidelines range] accordingly.").

The Guidelines commentary to § 1B1.3 gives examples of situations where coconspirators look as though they are working together but are not engaged in jointly undertaken criminal activity. That commentary clarifies that even "a street-level drug dealer who knows of other street-level drug dealers in the same geographic area who sell the same type of drug . . . [and] share a common source of supply" cannot be held "accountable for the quantities of drugs sold by the other street-level dealers" unless he "pools his resources and profits" with them. U.S.S.G. § 1B1.3, cmt. n.2(c), illus. 6.

Based on the evidence presented at trial, Mr. Figueroa knew of Mr. Campos, and Mr. Gonzalez's number was stored in his phone, but there was no evidence that he engaged in any drug dealings with them. Mr. Figueroa received delivery from Mr. Villa and Mr. Guzman, and Mr. Villa's number was also in his phone. But criminals engaged in the same illegal activity or working in the same area do not engage in jointly

-19-

undertaken criminal activity unless they work together, sharing supplies and revenues. *See* U.S.S.G. § 1B1.3, cmt. n.2(c), illus. 6; *see also United States v. Ekanem*, 555 F.3d 172, 176 (5th Cir. 2009) ("[M]ere awareness that [co-defendants were] operating an identical fraudulent scheme is insufficient to hold [defendant] responsible for [their] actions" at sentencing.).

No evidence indicated that Mr. Figueroa intended to engage in jointly undertaken criminal activity with Mr. Campos, Mr. Villa, or Mr. Gonzalez outside of his three purchases. Under the Guidelines commentary, the evidence did not establish that all of the conspiracy transactions were within the scope of Mr. Figueroa's jointly undertaken criminal activity. Such proof is required to attribute all of the drugs from the conspiracy's transactions to Mr. Figueroa as relevant conduct.

Because the district court attributed all of the drugs in the conspiracy to Mr. Figueroa as relevant conduct without making particularized findings about the actual scope of his jointly undertaken criminal activity, his total offense level was 34, and his advisory Guidelines range was 151 to 188 months. Had the sentencing court made the necessary particularized findings, it is at least reasonably probable that it would have attributed to Mr. Figueroa only the amount of drugs from transactions in which he was directly involved—56.7 grams. His base offense level would then have been 26, and his

Guidelines range would have been 63 to 78 months. *See* U.S.S.G. § 2D1.1(c)(7); *id.* Ch. 5, Pt. A (sentencing table).

"Circuit precedent establishes that the application of the wrong guideline range through obvious error constitutes a fundamental error affecting substantial rights within the meaning of Rule 52(b)." *United States v. Johnson*, 414 F.3d 1260, 1264 (10th Cir. 2005). The district court's failure to make particularized findings therefore affected Mr. Figueroa's substantial rights.

d. *Serious effect on the fairness, integrity, or reputation of judicial proceedings*

The fourth factor of plain error review requires that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Teague*, 443 F.3d at 1314. When we apply the fourth element of plain error review to forfeited sentencing errors, the "key concern" is "whether correct application of the sentencing laws would likely significantly reduce the length of the sentence." *United States v. Cordery*, 656 F.3d 1103, 1108 (10th Cir. 2011).

We cannot say for certain that particularized findings would have yielded a different sentence. But the foregoing analysis shows that "the district court would *likely* impose a significantly lighter sentence on remand," which satisfies the fourth element of plain error review. *United States v. Thomas*, 410 F.3d 1235, 1249 (10th Cir. 2005) (emphasis added); *see also United States v. Meacham*, 567 F.3d 1184, 1190 (10th Cir.

-21-

2009) (holding that satisfaction of the fourth factor of plain error review is satisfied by "a *strong possibility* of receiving a significantly lower sentence" (emphasis added) (quotations omitted)). "Not every error resulting in an increased sentence will meet this standard." *Cordery*, 656 F.3d at 1108. But in Mr. Figueroa's case, the sentence he received was significantly longer than what he likely would have received if the error had not occurred.

As explained above, it is at least reasonably probable that the district court's failure to make particularized findings led it to apply a Guidelines range of 151 to 188 months, more than double the 63 to 78 month Guidelines range that Mr. Figueroa probably should have received based on the evidence from trial. At sentencing, the district court said that it gave "significant weight" to the Guidelines calculation and explained that it was sentencing Mr. Figueroa below the Guidelines range based on his lack of prior convictions and good employment history. ROA, Vol. II at 742. Had the court applied the same weight to the 63 to 78 month Guidelines range, there is a "strong possibility" the court would have given Mr. Figueroa a sentence "significantly lighter" than the one he is currently serving. *See Cordery*, 656 F.3d at 1108 (holding that the likelihood of a sentence that was five months or ten percent longer than it should have been satisfied the fourth element of plain error review).

\* \* \*

-22-

The district court's failure to make particularized findings was an obvious error and likely resulted in a Guidelines range that was calculated in conflict with controlling law in the Guidelines commentary. This error was plain, affected Mr. Figueroa's substantial rights, and had a serious effect on the fairness and integrity of his judicial proceedings.

## IV. **CONCLUSION**

The district court plainly erred by relying on the undisputed PSR instead of making particularized findings. We reverse the sentence imposed by the district court and remand for resentencing.