**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

MICHAEL W. BIGLOW,

     Defendant - Appellant.

No. 12-3229
(D.C. No. 6:07-CR-10221-MLB-3)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **MURPHY**, and **BACHARACH**, Circuit Judges.

Michael Biglow was convicted of conspiracy to distribute and possess with intent

to distribute 500 grams or more of cocaine in addition to five counts of unlawful use of a

communication facility.  Biglow challenges the conspiracy conviction, one of the

communication facility counts, and his sentence.  Exercising jurisdiction pursuant to 28

U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm Biglow's conspiracy conviction but

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

reverse the challenged communication facility count. We vacate Biglow's sentence on the conspiracy count and the remaining communication facility counts, and remand for resentencing.

## I

In 2007, officials began surveillance of a residence which Tyrone Andrews, a drug dealer in Wichita, Kansas, was using as a stash house. Biglow drew attention from authorities when he visited the residence on July 10, 2007. Andrews testified that during this visit he fronted Biglow a "two-piece" of cocaine, consisting of 2.25 ounces, or approximately 64 grams.[1]

When officials subsequently commenced a wiretap on Andrews' phones, they intercepted several calls between Andrews and Biglow. Five of the calls resulted in charges against Biglow for unlawful use of a communication facility. Of the five calls, the first four took place in the days and hours before Andrews sold cocaine to Biglow at Biglow's place of employment. In that transaction, Biglow bought two "two-pieces" (approximately 128 grams) of cocaine.

The fifth call, which formed the basis of Count 24 of the indictment and was labeled at trial as Call 419, occurred the day before Andrews' arrest. It included a discussion of Andrews' inventory, and reflected that Biglow was aware of Andrews' two

---

[1] "Fronting" is an arrangement under which drugs are provided on credit in exchange for payment from proceeds later realized on the sale of the drugs. See United States v. Small, 423 F.3d 1164, 1184 (10th Cir. 2005).

suppliers and could distinguish between their products. It also contained a statement by Biglow that someone had complained to him about the cocaine. Biglow requested cocaine during the call, but it did not result in a sale. Andrews testified that he lied when he told Biglow he did not have any cocaine to sell him, because he did not trust Biglow enough to sell him a large quantity.

Andrews was arrested on September 22, 2007. On September 27, 2007, Biglow was stopped and his car was searched. A search warrant was executed at Biglow's home that day, and evidence from that search was admitted at trial.

Biglow was brought to trial on April 3, 2012, pursuant to a Fifth Superseding Indictment. After the prosecution rested, the judge dismissed several of the counts against him. The jury convicted Biglow of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture containing cocaine and five counts of unlawful use of a communication facility, but found him not guilty of possession with intent to distribute 500 grams or more of cocaine. The district court imposed concurrent sentences of sixty months' imprisonment on the conspiracy count and forty-eight months' imprisonment on each of the communication facility counts.

**II**

Biglow challenges the sufficiency of the evidence supporting his conspiracy conviction. We review the sufficiency of evidence supporting a conviction "de novo, viewing the evidence in the light most favorable to the government." United States v. Atencio, 435 F.3d 1222, 1232 (10th Cir. 2006). Our role is to "determine whether a

reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. We do not co-opt the jury's role "as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented." United States v. Stiger, 413 F.3d 1185, 1194 (10th Cir. 2005) (quotation omitted). We "simply determine whether the evidence, if believed, would establish each element of the crime." United States v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004) (quotation and alteration omitted).

To prove a conspiracy, "the government was required to show: (1) that two or more persons agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, . . . (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged coconspirators were interdependent." United States v. Sells, 477 F.3d 1226, 1235 (10th Cir. 2007) (quotation omitted). The government does not need to prove that Biglow played a major role in the conspiracy. United States v. Anaya, 727 F.3d 1043, 1050 (10th Cir. 2013).

The parties dispute whether the quantity charged became a fifth element of the crime under our case law. Because we conclude there was sufficient evidence for the jury to convict Biglow of joining a conspiracy involving 500 grams or more of cocaine, we need not decide whether quantity became an element of the crime.

As an initial matter, Biglow concedes that there was substantial evidence of an agreement between himself and Andrews. But the record also clearly supports that Biglow was aware of, and relied upon, Andrews' suppliers, such that the jury could

-4-

include Andrews' suppliers in the conspiracy. Biglow's telephone conversations with Andrews also reflect that Biglow was aware Andrews was receiving quantities in excess of 500 grams of cocaine from his two suppliers, and that Biglow knew Andrews and the two suppliers "knowingly or intentionally possessed [cocaine] with the intent to distribute it." Anaya, 727 F.3d at 1051 (quotation omitted).

To determine if the alleged conspirators were interdependent, "we ask whether the coconspirators intended to act together for their shared mutual benefit within the scope of the conspiracy charged." United States v. Cornelius, 696 F.3d 1307, 1317 (10th Cir. 2012) (quotation and alteration omitted). Biglow contends that he had only a casual buyer-seller relationship with Andrews, which is insufficient to support a conviction for conspiracy. See United States v. Ivy, 83 F.3d 1266, 1285 (10th Cir. 1996). "[T]he purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy." Id. at 1285-86. The record clearly supports a finding that Biglow was selling the drugs he purchased from Andrews. Call 419 contains statements by Biglow indicating that he was distributing cocaine to other people.

Andrews also testified that he fronted drugs to Biglow when they met on July 10, 2007. "[A] single act can constitute sufficient proof" of interdependence. Id. (quotation omitted). We have recognized that "fronting creates a situation of mutual dependence because the seller's ability to front drugs is dependent on his receipt of money due."

-5-

Small, 423 F.3d at 1185 (citing United States v. Roberts, 14 F.3d 502, 511 (10th Cir. 1993)).

When Biglow became part of the conspiracy, he joined an active distribution network of Andrews and his suppliers. Generally, "a defendant who joins an ongoing conspiracy may be held accountable—for purposes of determining the scope of liability for the conspiracy charge itself—[for] the acts or statements of coconspirators that occurred prior to his entry into the conspiracy, if those acts or statements were in furtherance of the conspiracy." United States v. Hamilton, 587 F.3d 1199, 1207 (10th Cir. 2009). Trial testimony revealed that the conspiracy involved kilogram quantities of cocaine, far more than 500 grams. Although, as discussed below, Biglow cannot be held accountable at sentencing for any amounts not attributable to him, a reasonable jury could have found that Biglow joined an ongoing conspiracy involving more than 500 grams of cocaine.

### III

Biglow argues that one of his five convictions for unlawful use of a communication facility must be reversed due to insufficient evidence. The relevant statutory provision prohibits using "any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony . . . ." 21 U.S.C. § 843(b). "We have previously held that inchoate crimes such as attempt and conspiracy qualify as drug felonies that may underlie a Section 843(b) offense." United States v. Acosta-Gallardo, 656 F.3d 1109, 1122 (10th Cir.), cert. denied, 132 S. Ct. 540

-6-

(2011).

Biglow telephoned Andrews on the afternoon of September 21, 2007, and the conversation was recorded by authorities as Call 419. The six-minute conversation was played to the jury, after which Andrews testified about it. During the call, Biglow repeatedly requested cocaine from Andrews, but Andrews told him that he only had one kilogram left and that it was already sold. The pair spoke at some length about Andrews' supply.

At trial, Andrews testified that he had not actually sold the last kilo, but that he did not trust Biglow, and so did not want to sell him any significant quantities of drugs. When asked about Biglow's final apparent request at the end of the call—Biglow said "Two man two"—Andrews testified that he was not certain whether Biglow was referring to two-pieces or kilograms, but that he did not "really care because [he] wasn't going to sell 'em to him that day anyway."

The jury instructions for the counts charging unlawful use of a communication facility required the government to prove, in addition to Biglow's knowing use of a telephone, that "Biglow acted with the intent to commit, cause or facilitate the commission of one or more drug felonies, namely conspiracy to distribute controlled substances, conspiracy to possess with the intent to distribute, possession with the intent to distribute and/or distribution of controlled substances." The instructions clarified that to "'facilitate the commission of a drug felony' means to make the commission of the drug felony easier [or] aid or assist in the commission of the offense." Neither the

government nor Biglow objected to the instructions.

"[T]he case law in this circuit clearly establishes that we adhere to the law of the case doctrine, whereby the Government is required to prove all elements put forth in unchallenged instructions to the jury, even if the Government would not, under law, be otherwise required to do so." United States v. Romero, 136 F.3d 1268, 1273 (10th Cir. 1998). The jury instruction specifically named the predicate offenses that could support a conviction for unlawful use of a communication facility, and that list did not include any attempt crimes. We cannot, therefore, uphold the conviction on an attempt-to-possess theory. Andrews' testimony that he was unwilling to sell cocaine to Biglow was the only testimony elucidating the contents of Call 419, and it demonstrated that the call could not facilitate the conspiracy. Because the call also did not cause or facilitate the distribution or possession of cocaine, there was insufficient evidence to allow the jury to convict Biglow on Count 24, regardless of the outcome that might have been possible had the jury instruction included attempt crimes. We must reverse the conviction.

## IV

Biglow also challenges his sentence. The quantity of drugs attributable to a defendant at sentencing is not necessarily the same as the amount involved in the conspiracy as a whole. See United States v. Figueroa-Labrada, 720 F.3d 1258, 1265 (10th Cir. 2013). At sentencing, Biglow is "accountable for all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook."

-8-

Id. (quoting U.S.S.G. § 1B1.3, cmt. n.2).

The government concedes that the district court committed error, and that the error was plain, by failing to make particularized findings regarding drug quantity at Biglow's sentencing. See id. at 1269 (district court's failure to make particularized findings about drug quantity attributable to defendant in sentencing for conspiracy conviction constitutes plain error). Because Biglow failed to object to the lack of particularized findings at sentencing, the plain error standard of review is appropriate.[2] Figueroa-Labrada, 720 F.3d at 1266. In accordance with our precedent, we agree that the district court erred and the error was plain. Thus, Biglow must show that the error affected substantial rights and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation omitted).

---

[2] The government contends that this case presents concerns of invited error at the sentencing stage. See United States v. Deberry, 430 F.3d 1294, 1302 (10th Cir. 2005) ("[T]he invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt."). Although we are sympathetic to the government's concerns, invited error typically involves waiver, which "requires a showing that a known right has been intentionally relinquished or abandoned." United States v. McGehee, 672 F.3d 860, 873 (10th Cir. 2012) (emphasis in original) (quotation and alterations omitted). At the sentencing hearing, defense counsel clearly articulated that the court should look only to Biglow's "actual involvement" in determining his sentence. However, counsel capitulated his position because, as he stated, he was unaware of "a good argument" that would allow the court to sentence Biglow "below the statutory mandatory minimum," to which the court interjected, "I don't think as a matter of law that I can." In this unique circumstance, we conclude that Biglow's claims were forfeited through neglect rather than waived and thus may be examined for plain error. See, e.g., id. ("[W]here a defendant has forfeited an issue in the district court, in order to prevail in an appellate challenge regarding that issue, a defendant must make a sufficient showing of error under the plain-error standard.").

In order to establish prejudice to substantial rights, Biglow must demonstrate a "reasonable probability" that the error "affected the outcome of the district court proceedings." United States v. Dazey, 403 F.3d 1147, 1175 (10th Cir. 2005) (quotations omitted). Biglow asserts, and the record reflects, that he was sentenced based on the statutory mandatory minimum for a conspiracy involving 500 grams or more of cocaine, even though that amount did not reflect his personal culpability. Because our review of the record supports Biglow's argument that a quantity less than 500 grams is attributable to him, there is a reasonable probability that the district court would not sentence him to the mandatory minimum for 500 grams or more.

As in Figueroa-Labrada, "[w]e cannot say for certain that particularized findings would have yielded a different sentence. But the foregoing analysis shows that the district court would likely impose a significantly lighter sentence on remand, which satisfies the fourth element of plain error review." 720 F.3d at 1268 (quotation and emphasis omitted). Therefore, we vacate Biglow's sentence on the conspiracy count and remand for resentencing. Because we vacate Biglow's sentence on this ground, we need not address his other arguments about his conspiracy sentence.

Biglow's sentences on the communication facility counts were grouped at sentencing with the conspiracy count. Accordingly, they were also based on an improper drug quantity. See U.S.S.G. § 3D1.2. Therefore, we also vacate and remand the sentences for the remaining communication facility counts.

-10-

## V

Finally, Biglow challenges the legality of a warrant authorizing the search of his home. He alleges that the admission of evidence seized during the search was error. The district court originally suppressed the fruits of the search, and we reversed. United States v. Biglow, 562 F.3d 1272, 1275, 1283 (10th Cir. 2009). Biglow raises the issue here "to preserve his right to seek review of the search by the U.S. Supreme Court." To the extent Biglow re-argues the denial of his motion to suppress, the "law of the case" doctrine applies. See United States v. Gonzales-Sanchez, 329 F. App'x 802, 804 (10th Cir. 2009) (unpublished) (dismissing as moot a similar claim in which defendant attempted to reargue denial of her suppression motion in order to continue pursuing appeal to Supreme Court); see also Dickerson v. United States, 530 U.S. 428, 432 (2000) (addressing, in interlocutory appeal, circuit court's reversal of district court's grant of motion to suppress). Biglow does not assert, and we cannot conclude, that this case raises one of the "three exceptionally narrow circumstances" that would allow us to "depart from the law of the case doctrine." United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998) (listing the three circumstances as "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice").

## VI

For the foregoing reasons, we **AFFIRM** Biglow's conspiracy conviction but we **REVERSE** his conviction on Count 24 of the indictment for unlawful use of a communication facility.  We **VACATE** Biglow's sentence and **REMAND** to the district court for resentencing.

Entered for the Court


Carlos F. Lucero
Circuit Judge