**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 9, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

MICHAEL W. BIGLOW,

  Defendant-Appellant.

No. 14-3104

(D.C. No. 6:07-CR-10221-MLB-3)

(D. of Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **TYMKOVICH**, and **McHUGH**, Circuit Judges.

Michael Biglow appeals a five-year mandatory-minimum sentence for conspiracy to distribute cocaine, which the district court reimposed at resentencing after we vacated and remanded in *United States v. Biglow* (*Biglow I*), 554 F. App'x 679 (10th Cir. 2014). Biglow argues and the government agrees this reimposition was error, because the drug-quantity findings in the record attributed an insufficient amount of cocaine to Biglow to support the sentence imposed, a sentence that required at least 500 grams be attributed to him. But the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

government advances another basis for affirming the sentence—that the record supports the necessary drug quantities and we should uphold the sentence on alternative grounds.  This we cannot do.  The district court found Biglow responsible for 192 grams of cocaine and made findings inconsistent with the government's argument on appeal.  And our review for clear error reveals no basis to replace those findings by searching the record for our own calculation of quantities.[1]

Accordingly, exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we vacate Biglow's sentence[2] and remand for resentencing.

## I. Background

Biglow was convicted of conspiracy.  Under Federal law, "[a]ny person who attempts or conspires to commit" various drug crimes "shall be subject to the same penalties as those prescribed for the offense, the commission of which was

---

[1]  As discussed below, it is also doubtful that upholding the sentence on the basis of judge-found facts found by the district court or this court for the first time on appeal would be permitted by *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

[2]  Although our analysis focuses on Biglow's conviction under 21 U.S.C. § 846 (conspiracy to commit certain drug offenses), Biglow was also convicted of multiple violations of 21 U.S.C. § 843(b) (unlawful use of a communication facility).  Those sentences were "grouped at sentencing with the conspiracy count," and are based on the same drug-quantity determination. *Biglow I*, 554 F. App'x at 685.  They run concurrently with the conspiracy sentence.  Thus, those sentences are also vacated for resentencing on remand.

the object of the attempt or conspiracy." 21 U.S.C. § 846. One such crime is established by § 841(a)(1), which bans the distribution of various controlled substances. Under § 841(b)(1)(B)(ii)(II), a defendant faces a five-year mandatory minimum if he violates § 841(a)(1) by distributing 500 grams or more of a mixture or substance containing cocaine.

The district court imposed that five-year mandatory minimum after Biglow's conviction under § 846 for being part of a conspiracy that, as a whole, wished to distribute 500 grams or more of cocaine. On appeal, we vacated the sentence and remanded for resentencing. We explained that the "quantity of drugs attributable to a defendant at sentencing is not necessarily the same as the amount involved in the conspiracy as a whole," and that Biglow's punishment had to correspond to particularized findings regarding the contraband for which he was personally "accountable." *Biglow I*, 554 F. App'x at 684–85. No such particularized drug-quantity findings had been made; the court had imposed the mandatory minimum associated with actually distributing 500-plus grams of cocaine because Biglow was convicted of being part of a conspiracy that wished to do just that. The government conceded plain error. *See id.* at 684.

On remand, the district court made particularized findings that Biglow was responsible for only 192 grams of cocaine, much less than the 500 grams necessary to support the mandatory minimum. Nevertheless, it again imposed a mandatory minimum, concluding § 846 left it no other options.

-3-

## II. Analysis

Biglow contends (and the government concedes) the district court wrongly imposed a mandatory-minimum sentence despite a drug-quantity finding of 192 grams, which here would have prescribed a guidelines range of 27–33 months. We agree.

As we held in *Biglow I*, a drug-conspiracy conviction alone is insufficient to make an individual conspirator responsible for the entire quantity of drugs for which the conspiracy was responsible. Instead, these defendants may only be punished for the amount of controlled substances that can be "attributed" to them personally, as opposed to the conspiracy generally. *See United States v. Figueroa-Labrada*, 720 F.3d 1258, 1265 (10th Cir. 2013) (noting attributable amount is "not necessarily based on the overall amount involved in the conspiracy for which [a defendant] was convicted or on the transactions in which he personally participated"). To determine this amount, the district court must hold the defendant "accountable" for his "relevant conduct," which "includes all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant and all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity." *Id.* (quoting USSG §§ 1B1.3(a)(1)(A), (B)) (internal quotation marks omitted) (alteration in original). This "includes any controlled substance that was handled by another member of the conspiracy" if it was "in furtherance of the jointly

undertaken criminal activity" and "reasonably foreseeable in connection with that criminal activity." *Id.* In short, a defendant is "accountable for all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *Id.* (omission in original).

The attributed drug quantity will then be used both to determine a conspirator's appropriate guidelines range and to determine whether a statutory mandatory penalty associated with the underlying object offense of the conspiracy applies to an individual conspirator, *see United States v. Asch*, 207 F.3d 1238, 1245 n.7 (10th Cir. 2000).[3] This is the principle we relied on in vacating Biglow's original sentence, indicating that if on remand "a quantity less than 500 grams [was] attributable to [Biglow]," the "district court would not sentence him to the mandatory minimum for 500 grams or more." *Biglow I*, 554 F. App'x at 684.

Even so, and despite only attributing 192 grams of cocaine to Biglow, the district court concluded that Biglow's conspiracy conviction required sentencing him to the mandatory minimum. The government advises that conclusion was error (even though it urged the district court to undertake the analysis it will not

---

[3] As discussed below, the government disputes whether the attribution method described above applies to triggering a mandatory minimum. But, as also noted, we do not pass on that question because our application of this method to that precise question in *Biglow I* set the law of the case for our current purposes.

-5-

defend on appeal), but urges us to affirm the sentence on the alternative basis that evidence in the record proves that 500-plus grams of cocaine are attributable to Biglow.

For several reasons, we disagree. First and importantly, much of the government's argument on this point is foreclosed by the law of the case. Generally, "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case." *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1143 (10th Cir. 2006)

A "complementary theory" is the "mandate rule," which "generally requires [district] court conformity with the articulated appellate remand." *United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996) (alteration in original). The mandate "consists of our instructions to the district court at the conclusion of [an] opinion, and the entire opinion that preceded those instructions." *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003). Thus, it includes any issue decided explicitly or by necessary implication in the opinion. *See id.*; *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1410 (10th Cir. 1996) ("[T]he law of the case applies to issues that are resolved implicitly . . . .").

The government does not dispute that *Biglow I* established the law of the case and thus constituted the mandate on remand. In *Biglow I*, we stated Biglow was only accountable for his relevant conduct: "all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of

-6-

contraband that were within the scope of the criminal activity that he jointly undertook." *Biglow I*, 554 F. App'x at 684 (quoting *Figueroa-Labrada*, 720 F.3d at 1265) (omission in original). Consequently, according to *Biglow I*, defendants like Biglow cannot receive a statutory mandatory minimum unless the factfinder makes "particularized findings regarding the scope" of the defendant's attributable conduct that meet or exceed the statutory triggering amount of 500 grams. *Figueroa-Labrada*, 720 F.3d at 1265.

That mandate forecloses part of the government's argument. Although it never attacks *Biglow I* directly, it claims the attribution method described in *Figueroa-Labrada* and applied in *Biglow I* does not apply to cases not involving a statutory minimum. Instead, it suggests a different, broader rule applies when determining whether a statutory minimum has been triggered, relying on a line of cases beginning with *United States v. Arias-Santos*, 39 F.3d 1070 (10th Cir. 1994). Under that standard, it says, defendants can be held responsible "for drugs involved in the activities of coconspirators" as long as those activities were "reasonably foreseeable to [the] defendant." Aple. Br. at 24 (internal quotation marks omitted). That is, the government need not show the defendant jointly undertook the criminal activity leading to the coconspirators' actions, a requirement it says applies only in the guidelines context. *Id.*; *see also id.* at 26 n.9 (asserting this "reasonable-foreseeability standard is broader than 'jointly undertaken criminal activity' and is thus easier to prove").

As an initial matter, whatever else *Arias-Santos* and related cases mean, we do not understand the government to assert they mean defendants in these cases are accountable for drugs involved in the activities of coconspirators simply as long as those acts are "reasonably foreseeable" to them. The standard is "within the scope of the agreement *and* reasonably foreseeable to [the defendant]." *Arias-Santos*, 39 F.3d at 1078 (emphasis added). The scope requirement is key: it means that just knowing of coconspirators' illicit activities, without more, will not suffice to attribute such activities to a defendant unless the activities are also within the agreement's scope.

Even then, it is not clear our cases support the distinction the government asserts between attribution calculations for statutory penalty purposes and attribution calculations for guidelines purposes. For example, in *Arias-Santos*, the defendant claimed that an erroneous 500-gram cocaine attribution resulted in "an improperly high guideline range" *and* that "her downward departure was erroneously restricted by the inapplicable statutory minimum [associated with 500 grams of cocaine]." *Id.* at 1077–78. We disposed of both arguments, thus determining her accountability for both purposes, by asking a single question: whether the factfinder clearly erred in concluding the 500 grams were in fact "within the scope of the agreement and reasonably foreseeable to her." *Id.* at 1078; *see also United States v. Johnston*, 146 F.3d 785, 795 (10th Cir. 1998) (applying the *Arias-Santos* language in evaluating district court's guidelines

-8-

calculation); *United States v. Morales*, 108 F.3d 1213, 1225–26 (10th Cir. 1997) (applying the relevant-conduct language from the Guidelines in determining propriety of a mandatory minimum). With this understanding, there is no meaningful difference between *Figueroa-Labrada* and *Arias-Santos*.

In any event, the government asks us to apply this "*Arias-Santos* rule" to attribute 500-plus grams of cocaine connected with the actions of Biglow's coconspirators to Biglow as reasonably foreseeable to him. But this alternative reading of the record is inconsistent with *Biglow I*, which established the particularized-attribution law that applies here and is binding absent any clearly applicable exception. The government has offered none, and our independent review has revealed none.

Consequently, the attributable quantities are those with which Biglow was "directly involved" and "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *Figueroa-Labrada*, 720 F.3d at 1265. We review a sentencing court's calculation of the quantity of drugs attributable to a defendant for clear error and reverse only if it "was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *United States v. Patterson*, 713 F.3d 1237, 1249 (10th Cir. 2013). The court explicitly rejected the 500-plus gram argument when it found Biglow accountable for only 192 grams at resentencing. *See* R., Vol. I at 123 (rejecting government's arguments that "Biglow is

responsible for greater quantities" and finding Biglow "responsible for 192 grams of cocaine for the reasons in the record at his original sentencing"). We see no clear error in that finding.

The government relies on two pieces of testimony in an effort to show clear error, both of which it presented to the district court below. First, it directs us to a phone call between Biglow and Tyrone Andrews, a coconspirator, in which it contends Biglow showed knowledge that Andrews and other coconspirators were handling kilogram quantities of cocaine, thus making 500-plus grams of cocaine necessarily attributable to Biglow.

Second, the government argues the discovery of a plastic bag containing cocaine residue and "capable of holding a kilogram of cocaine" at Biglow's residence should have led the court to conclude Biglow "was handling kilogram-sized quantities of cocaine." Aple. Br. at 35–36.

We find neither point persuasive. Biglow's mere knowledge of Andrews's other drug activities, without more, is insufficient to hold him accountable for those activities since defendants are accountable for "any controlled substance that was handled by another member of the conspiracy" *if* it was "in furtherance of the jointly undertaken criminal activity" *and* "reasonably foreseeable in connection with that criminal activity." *Figueroa-Labrada*, 720 F.3d at 1265. The district court could have permissibly thought the phone call insufficient to attribute 500-plus grams to Biglow under either or both of these prongs,

regardless of his knowledge of Andrews's other activities. *See id.* (noting importance of determining "the scope of *the specific agreement the individual defendant joined* in relation to the conspiracy as a whole") (emphasis added); *see generally* USSG § 1B1.3, comment. (n.2) (providing several examples applying this rule). After all, Andrews's illegal activities with other coconspirators were not necessarily in furtherance of Biglow's jointly undertaken criminal activity: The conspiracy-related activity that may be attributed to a defendant as relevant conduct is "not necessarily the same as the scope of the entire conspiracy." *Figueroa-Labrada*, 720 F.3d at 1265. The record does not foreclose the court's conclusion. Indeed, *Biglow I* expressly anticipated it by noting the possibility that a sub-500-gram attribution to Biglow would preclude the mandatory minimum on remand even though Biglow knew of Andrews's 500-plus-gram activities. *See Biglow I*, 554 F. App'x at 682, 684.

The plastic bag containing cocaine residue does not compel a contrary result. That a container can hold a kilogram of a given substance certainly does not preclude the storage of smaller quantities there. We will not hold the district court's 192-gram determination clearly erroneous just because a container that could hold a kilogram once held an indeterminate quantity of cocaine.

The district court rejected these arguments below, and the government has not shown that decision was without factual support in the record. Showing the

court could have concluded otherwise is insufficient. Thus, we cannot invalidate the district court's 192-gram finding.

Because we reject the government's argument for upholding the mandatory minimum, we need not consider whether actually accepting the argument—i.e., affirming on a factual determination made for the first time on appeal—would be permissible after *Alleyne v. United States*, 133 S. Ct. 2151 (2013). In *Alleyne*, the Supreme Court held that "a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed." *Id.* at 2160. Because such facts "by law[] increase[] the penalty for a crime," they "*must be submitted to the jury and found beyond a reasonable doubt*." *Id.* at 2155 (emphasis added). Thus, after *Alleyne*, a district court may not "use its own drug quantity finding to alter the defendant's *statutory* sentencing range." *United States v. Cassius*, 777 F.3d 1093, 1094 (10th Cir. 2015). And, in cases like ours, particularized drug-quantity findings are facts triggering mandatory minimums.

Despite this, *Alleyne* could only potentially constrain our decision if we *upheld* the mandatory minimum by reviewing the record ourselves. Because we only examined the facts in the course of *rejecting* the government's argument for triggering a mandatory minimum, this disposition raises no *Alleyne* questions. But it is clear *Alleyne* will affect the ability of the district court to impose a statutory mandatory minimum absent jury factfinding. We nonetheless leave for

the parties and the district court to consider any lingering *Alleyne* questions for remand.

## III.  Conclusion

For the foregoing reasons, we VACATE Biglow's sentence and REMAND for de novo resentencing.  *See United States v. Thomas*, 749 F.3d 1302, 1315 (10th Cir. 2014) ("[A] remand for resentencing generally allows the district court to conduct de novo review . . . .").

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge